Case No. 25-20590

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

KERRY LEE THOMAS

Plaintiff – Appellee

v.

ERIC M. BRUSS; WAYNE SCHULTZ,

Defendants - Appellants

---

On Appeal from the United States District Court for the Southern District of Texas
Civil Action No. 4:23-cv-662

---

## APPELLANTS' BRIEF

---

Stephanie A. Hamm
Alexa Gould
THOMPSON & HORTON LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Appellant/Defendants**: Eric M. Bruss and Wayne Schultz

**Counsel for Appellants**: Stephanie A. Hamm
Alexa Gould
Celena Vinson
THOMPSON & HORTON LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

**Appellee/Plaintiff**: Kerry Lee Thomas

**Counsel for Appellee**: Brittany Francis
PEOPLES' COUNSEL
1900 W. Gray Street
P.O. Box 130442
Houston, Texas 77219
Telephone: (713) 487-9809

Alessandro Clark-Ansani
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Telephone: (202) 844-4975

/s/ Stephanie A. Hamm
Stephanie A. Hamm

ii

# <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Officers Eric M. Bruss and Wayne Schultz were denied qualified immunity below on a Section 1983 bystander liability claim. The lower court denied qualified immunity even though it is not clearly established that police officers have a duty to intervene when a dog handler releases a canine to apprehend a noncompliant suspect. Because of the important and novel questions of law raised by the lower court's opinion, Appellants Bruss and Schultz respectfully request oral argument to assist with the decisional process.

# TABLE OF CONTENTS

Certificate of Interested Parties ...................................................................................ii

Statement Regarding Oral Argument.........................................................................iii

Index of Authorities .................................................................................................. v

Statement of Jurisdiction .......................................................................................... 1

Statement of Issue Presented for Review.................................................................. 2

Statement of the Case ............................................................................................... 2

    A.     Material Undisputed Facts.................................................................... 2

          1.     Deputy Eric Bruss.................................................................... 3

          2.     Sergeant Wayne Schultz .......................................................... 7

    B.     Course of Proceedings and Disposition Below ........................................... 9

Summary of the Argument...................................................................................... 10

Standard of Review ................................................................................................. 12

Argument and Authorities...................................................................................... 12

    A.     Legal Standards for Qualified Immunity...................................... 12

    B.     The district court erred in denying Bruss and Schultz qualified immunity................................................................ 14

          1.     Thomas failed to carry his burden of proving that Bruss and Schultz violated clearly established law......................... 15

          2.     Existing law demonstrates that Bruss and Schultz are entitled to qualified immunity ......................................... 23

Conclusion and Prayer............................................................................................ 25

Certificate of Service ............................................................................................... 26

Certificate of Compliance........................................................................................ 27

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. Eeds,*
    392 F.3d 138 (5th Cir. 2004)..............................................................13, 14

*Anderson v. Creighton,*
    483 U.S. 635 (1987)......................................................................... 13

*Ashcroft v. al–Kidd,*
    563 U.S. 731 (2011)......................................................................... 13

*Austin v. City of Pasadena,*
    74 F.4th 312 (5th Cir. 2023) ..........................................................20, 21

*Brumfield v. Hollins,*
    551 F.3d 322 (5th Cir. 2008)............................................................. 13

*Carroll v. Carman,*
    574 U.S. 13 (2014)......................................................................... 20

*City & Cnty. of San Francisco, Calif. v. Sheehan,*
    575 U.S. 600 (2015)......................................................................... 20

*Club Retro, L.L.C. v. Hilton,*
    568 F.3d 181 (5th Cir. 2009)............................................................. 13

*Cooper v. Brown,*
    844 F.3d 517 (5th Cir. 2016)..........................................................19, 23

*D.C. v. Wesby,*
    583 U.S. 48 (2018).......................................................................... 15

*Deville v. Marcantel,*
    567 F.3d 156 (5th Cir. 2009)............................................................. 18

*Hale v. Townley,*
    45 F.3d 914 (5th Cir. 1995).............................................................20, 21

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)......................................................................... 12

*Hogan v. Cunningham,*
    722 F.3d 725 (5th Cir. 2013) ................................................................ 12

*Hunter v. Bryant,*
    502 U.S. 224 (1991) .............................................................................. 14

*Joseph on behalf of Estate of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020) .......................... 15, 16, 17, 19, 20, 21, 22

*Kisela v. Hughes,*
    584 U.S. 100 (2018) .......................................................................... 20, 21

*Malley v. Briggs,*
    475 U.S. 335 (1986) .......................................................................... 13, 14

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ............................................................................ 1, 14

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011) ................................................................ 13

*Morrow v. Meachum,*
    917 F.3d 870 (5th Cir. 2019) .......................................................... 21, 22

*Newman v. Guedry,*
    703 F.3d 757 (5th Cir. 2012) .......................................................... 12, 17

*Norman v. Ingle,*
    151 F.4th 707 (5th Cir. 2025) .............................................................. 16

*Pearson v. Callahan,*
    555 U.S. 223 (2009) .............................................................................. 12

*Pierce v. Smith,*
    117 F.3d 866 (5th Cir. 1997) .......................................................... 13, 14

*Reichle v. Howards,*
    566 U.S. 658 (2012) .............................................................................. 20

*Robinson v. Orient Marine Co.,*
    505 F.3d 364 (5th Cir. 2007) ................................................................ 12

*Salas v. Carpenter*,
    980 F.2d 299 (5th Cir. 1992)................................................................ 12, 13

*Siegert v. Gilley*,
    500 U.S. 226 (1991)............................................................................... 12

*Sligh v. City of Conroe*,
    87 F.4th 290 (5th Cir. 2023) ...............................2, 16, 17, 19, 21, 22, 23

*Stefanoff v. Hays Cnty.*,
    154 F.3d 523 (5th Cir. 1998)................................................................. 14

*Timpa v. Dillard*,
    20 F.4th 1020 (5th Cir. 2021) .............................................................. 18

*Trammell v. Fruge*,
    868 F.3d 332 (5th Cir. 2017)................................................................. 18

*Vincent v. City of Sulphur*,
    805 F.3d 543 (5th Cir. 2015) ............................................................... 13

*Walton v. Tunica Cnty., Miss.*,
    648 F. Supp. 3d 780 (N.D. Miss. 2023)........................................... 23, 24

*White v. Calvert*,
    2021 WL 6112791 (S.D. Tex. Dec. 27, 2021)........................................ 24

*Whitley v. Hanna*,
    726 F.3d 631 (5th Cir. 2013)....................................................15, 16, 21

**Statutes**
28 U.S.C. § 1291 ........................................................................................ 1

**Rules**
5TH CIR. R. 28.2.1 ......................................................................................ii

5TH CIR. R. 32.2 ....................................................................................... 27

5TH CIR. R. 32.3 ....................................................................................... 27

FED. R. APP. P. 32(a)(7) ........................................................................... 27

## STATEMENT OF JURISDICTION

This is an appeal from the denial of qualified immunity to Appellants Eric M. Bruss and Wayne Schultz.  Bruss and Schultz moved for summary judgment based on qualified immunity, which the district court denied on December 2, 2025.  [ROA.5318-5347].  Bruss and Schultz timely filed their Notice of Appeal on December 30, 2025.  [ROA.5363].  Appellate jurisdiction in the Court of Appeals is proper under 28 U.S.C. § 1291.  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.").

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Whether the district court erred in denying qualified immunity to officers Eric Bruss and Wayne Schultz on Kerry Lee Thomas's excessive force claim premised on bystander liability, given that no law clearly establishes that the Fourth Amendment required Bruss and Schultz to physically or verbally intervene during an active canine-assisted apprehension.

## STATEMENT OF THE CASE

To overcome Montes's qualified immunity defense, Sligh must identify law clearly establishing that Montes's actions violated her constitutional rights, i.e., she must show that any reasonable officer would have known that the Constitution required them to intervene [in a canine-assisted seizure]. She has not done so. We accordingly need not and do not reach the question of whether Montes violated Sligh's constitutional rights.

*Sligh v. City of Conroe*, 87 F.4th 290, 301 (5th Cir. 2023)

### A.    Material Undisputed Facts

On February 22, 2021, at 19:15 hours, Harris County Constable's Office Precinct One police dispatch receives a 911 call reporting a "disturbance with a weapon." [ROA.3823]. The 911 caller (the "Reportee") reports that two men are in front of his house screaming and yelling, and that this is the second time the men have created a disturbance. [ROA.3827]. The Reportee advises dispatch that he has his weapon out. [ROA.3827]. Dispatch sends units to the scene, and relays the information provided by the Reportee to responding officers over the radio. [ROA.3823; ROA.3827].

At 19:20:00, dispatch relays a description of the suspects. [ROA.3827]. At 19:20:47, dispatch reports that the Reportee has his weapon out. [ROA.3827]. And at 19:21:22, dispatch relays that the suspects are still at the scene. [ROA.3827].

Sergeant Robert Johnson, a trained canine handler, arrives at the scene with his canine, Jeck, at 19:21:48. [ROA.3866 at 19:21:48]. At 19:22:42, Johnson reports over the radio that he has repeatedly ordered the suspects to remain in their vehicle, but that they are not complying. Johnson also reports that one of the suspects (later identified as Kerry Lee Thomas) is saying he is ready to die and is telling Johnson to shoot him. [ROA.3840 at 19:22:42; ROA.3827].

### 1.    Deputy Eric Bruss

Deputy Eric Bruss reports he is enroute at 19:19:55. [ROA.3823]. Bruss arrives at the scene at 19:23:26—nearly two minutes after Johnson arrives, and less than one minute after Johnson reports that the suspects are not complying and that one suspect is telling Johnson to shoot him. [ROA.3867 at 19:23:26]. Johnson immediately warns Bruss that the driver, Raphael Gray, is not complying with directives. [ROA.3840 at 19:23:36]. Meanwhile, Thomas is also not complying, is refusing to get back into the vehicle, and is instead outside the car yelling, praying, and screaming: "kill me," "please just take me away from Earth," "Black Lives Matter," and "all lives matter." [ROA.3840 at 19:22:56–19:23:51].

As Thomas continues yelling, Johnson suggests to Bruss that they first get Thomas under control. [ROA.3840 at 19:23:42]. Ten seconds later, Gray begins exiting

3

the vehicle while the officers are issuing commands. [ROA.3840 at 19:23:52–19:23:55]. Johnson orders him back inside, and Gray complies. [ROA.3840 at 19:23:52–19:23:55]. Bruss takes over issuing commands to Gray: "Stop reaching! Show your hands!" [ROA.3841 at 19:23:49]. Thomas joins in yelling at Gray to "show him your hands." [ROA.3841 at 19:23:57].

Bruss then commands Gray to exit the vehicle. [ROA.3841 at 19:24:04]. As Gray is exiting the vehicle, Thomas (who has not yet been searched for a weapon) moves from behind the passenger-side door and begins walking toward the Johnson and Bruss. [ROA.3841 at 19:24:04]. Johnson orders Thomas to stop. [ROA.3840 at 19:24:04]. Thomas takes a few additional steps before stopping and continues yelling: "kill me!" [ROA.3840 at 19:24:09–19:24:15].

While Johnson issues orders to Thomas, Bruss continues focusing on controlling Gray. He instructs Gray to exit the vehicle, to turn away, and to get down on the ground with his arms extended. [ROA.3841 at 19:24:06–19:24:17]. Gray ultimately complies and lies prone. [ROA.3841 at 19:24:28]. Johnson then moves toward his patrol vehicle and orders Thomas to get on the ground. [ROA.3840 at 19:24:35]. Thomas slowly complies and lies face down near the front passenger side of the vehicle. [ROA.3840 at 19:24:36].

Bruss explains to Gray that neither he nor Thomas had been searched, and that the police were advised that the suspects had weapons. [ROA.3841 at 19:25:00]. Bruss warns Gray to keep his hands visible and to comply with his commands. [ROA.3841

4

at 19:25:00]. Bruss advises Johnson that he has Gray at gun point. [ROA.3841 at 19:24:32].

Thomas says "that is a good dog"—presumably referring to Johnson's canine, Jeck. [ROA.3840 at 19:25:18]. Bruss warns Gray to keep his hands off to his side and that he would get dog bite if he did not comply. [ROA.3841 at 19:25:25]. Bruss again tells Gray that he is an unsearched suspect and that, until the officers know he does not have a gun, Gray needs to comply. [ROA.3841 at 19:25:41].

Johnson directs Bruss to get Gray into custody. [ROA.3840 at 19:25:54]. Bruss quickly orders Gray to stand up and walk backwards to him. [ROA.3841 at 19:25:57]. Gray complies, kneels, and Deputy Asli Tuzun handcuffs him. [ROA.3841 at 19:26:14–19:26:34].[1] Bruss directs Tuzun to "search him real good." [ROA.3841 at 19:26:39].

Meanwhile, Johnson continues issuing commands to Thomas, as does another officer who arrives on the scene at 19:25:25.[2] [ROA.3842 at 19:25:49]. Thomas refuses to comply with multiple commands to stand up. [ROA.3842 at 19:26:59–19:27:17]. At 19:27:10, Johnson warns Thomas that he will release his canine if Thomas does not comply. [ROA.3842 at 19:27:10]. Thomas moves his head and leg up and down, but he does not comply with the officers' commands. [ROA.3842 at 19:27:12–19:27:19].

At 19:27:20, Johnson issues a final warning that he will release his canine if Thomas does not comply. [ROA.3840 at 19:27:20]. Thomas still refuses to stand up.

---

[1] Deputy Asli Tuzun arrived at the scene at 19:25:29. [ROA.3824].

[2] The specific actions of Sergeant Wayne Schultz are separately discussed below.

[ROA.3840 at 19:27:20–19:27:23].  Johnson releases his canine at 19:27:23, and immediately moves in to handcuff Thomas.  [ROA.3840 at 19:27:23–19:27:29].

As Johnson releases the canine, Bruss moves to check the vehicle for additional occupants or threats.  [ROA.3842 at 19:27:24; ROA.3841 at 19:27:26].  Bruss clears the vehicle at 19:27:37.  [ROA.3841 at 19:27:37].

Johnson initially struggles to gain control of Thomas.  Bruss tells Thomas that Johnson will take the dog off the bite as soon as soon as he is handcuffed.  [ROA.3841 at 19:27:59].  Johnson succeeds in handcuffing Thomas approximately three seconds later.  [ROA.3840 at 19:28:02].

Immediately after handcuffing Thomas, Johnson positions himself behind Jeck to remove the canine from the bite.  [ROA.3840 at 19:28:02–19:29:06].  Jeck releases the bite at 19:28:06—forty-three seconds after making initial contact with Thomas, and four seconds after Johnson handcuffs Thomas.  [ROA.3840 at 19:28:06].  From where Bruss is standing, he cannot see that Jeck has already released the bite, so he tells Johnson to take the dog off the bite at 19:28:11.  [ROA.3841 at 19:28:06–19:28:11].  Approximately sixteen seconds later, an officer calls dispatch to request an ambulance for Thomas's dog bite.  [ROA.3842 at 19:28:27].

Johnson searches the vehicle as Bruss takes Thomas into custody.  [ROA.3840 at 19:29:08].  Johnson asks Bruss to ask Thomas where the gun is.  [ROA.3840 at 19:29:08].  Another officer repeats the request.  [ROA.3842 at 19:29:26].  Johnson asks Tuzun how dispatch got the information that the suspects had a gun.  [ROA.3840 at

19:30:56]. Tuzun responds that it was a dispatch miscommunication. [ROA.3840 at 19:30:59]. Bruss states, "I specifically asked, she said the suspects." [ROA.3841 at 19:31:29].

Several minutes later, Thomas appears unresponsive and Bruss suspects that he is under the influence of narcotics. [ROA.3861 at ¶ 14]. Thomas immediately regains responsiveness after Bruss administers Narcan. [ROA.3841 at 19:37:06–19:37:19; *see* ROA.3827].

EMS arrives on the scene at 19:43:00, and transports Thomas to the hospital. [ROA.3866 at 19:43:00]. At the hospital, Thomas tests positive for multiple illegal substances, including cocaine, phencyclidine (PCP), cannabinoids, and amphetamines. [ROA.5545 (filed under seal)].

### 2. Sergeant Wayne Schultz

Sergeant Wayne Schultz arrives on the scene at 19:25:25—shortly after Gray and Thomas get on the ground. [ROA.3868 at 19:25:25]. Schultz (who has heard multiple reports over the radio that Thomas is not complying and is behaving erratically) immediately positions himself behind Johnson. [ROA.3842 at 19:25:39]. From behind Johnson, Schultz points his taser gun at Thomas while Johnson continues issuing commands to Thomas. [ROA.3842 at 19:25:49].

Schutlz repeatedly orders Thomas to stand up. [ROA.3842 at 19:26:59]. Thomas does not stand up despite eight commands to do so. [ROA.3842 at 19:26:59–19:27:17]. At 19:27:10, Johnson warns Thomas that he will release his canine if Thomas does not

comply. [ROA.3842 at 19:27:10]. Thomas looks up in the officers' direction, puts his head back down, and does not stand up. [ROA.3842 at 19:27:12]. Thomas then lifts his left leg, puts it back down, and still does not stand up. [ROA.3840 at 19:27:19].

At 19:27:20 (less than two minutes after Schultz arrives on the scene), Johnson issues a final warning that he will release his dog if Thomas does not comply. [ROA.3840 at 19:27:20]. Thomas still refuses to stand up. [ROA.3840 at 19:27:20– 19:27:23]. Johnson releases his canine at 19:27:23, and immediately moves in to handcuff Thomas. [ROA.3840 at 19:27:23–19:27:29]. Schultz remains behind Johnson to provide cover, as another officer checks the vehicle for additional occupants or threats.[3] [ROA.3842 at 19:27:24; ROA.3841 at 19:27:26].

Johnson initially struggles to gain control of Thomas but succeeds in handcuffing him at approximately 19:28:02. [ROA.3840 at 19:28:02]. Immediately after handcuffing Thomas, Johnson positions himself behind Jeck to remove the canine from the bite. [ROA.3840 at 19:28:02–19:29:06]. Jeck releases the bite at 19:28:06—forty-three seconds after making initial contact with Thomas, and four seconds after Johnson handcuffs Thomas. [ROA.3840 at 19:28:06]. Schultz calls dispatch to request an ambulance for Thomas's dog bite approximately twenty seconds later. [ROA.3842 at 19:28:27].

---

[3] The specific actions of Deputy Eric Bruss are separately discussed above.

Johnson searches the vehicle as another officer takes Thomas into custody. [ROA.3840 at 19:29:08]. Johnson asks the officer to ask Thomas where the gun is. [ROA.3840 at 19:29:08]. Schultz repeats the request. [ROA.3842 at 19:29:26]. Johnson asks Tuzun how dispatch got the information that the suspects had a gun. [ROA.3840 at 19:30:56]. Tuzun responds that it was a dispatch miscommunication. [ROA.3840 at 19:30:59].

Thomas later appears unresponsive, prompting another officer to administer Narcan. [ROA.3841 at 19:37:06–19:37:19]. EMS arrives on the scene at 19:43:00, and transports Thomas to the hospital. [ROA.3866 at 19:43:00]. At the hospital, Thomas tests positive for multiple illegal substances, including cocaine, PCP, cannabinoids, and amphetamines. [ROA.5545 (filed under seal)].

## B.   Course of Proceedings and Disposition Below

Kerry Lee Thomas sued the Estate of Robert Johnson,[4] Eric Bruss, and Wayne Schultz. [ROA.22-42]. Thomas claims that Johnson used excessive force during the canine-assisted arrest, and that Bruss and Schultz violated his Fourth Amendment rights by failing to intervene. [ROA.40-41]. Bruss and Schultz moved to dismiss Thomas's claims on May 26, 2023, asserting their entitlement to qualified immunity. [ROA.115-126]. The district court denied their motion on August 15, 2023. [ROA.235-252].

---

[4] Johnson died in May 2021.

On August 22, 2025, the parties filed cross-motions for summary judgment, and Bruss and Schultz again asserted their entitlement to qualified immunity. [ROA.1877-4006]. The district court denied the motions on December 2, 2025, finding that genuine fact disputes material to determining qualified immunity precluded summary judgment for any party. [ROA.5318-5347].[5] The court's qualified immunity analysis relies on dissimilar bystander liability cases, and discounts on-point cases demonstrating the absence of law clearly establishing that bystander officers have a constitutional duty to intervene in active canine-assisted apprehensions.

Bruss and Schultz timely filed this appeal on December 30, 2025. [ROA.5363]. On January 20, 2026, the district court stayed all proceedings pending the resolution of this appeal. [ROA.5370].

## SUMMARY OF THE ARGUMENT

Bruss and Schultz each arrived at an active scene to assist with a rapidly evolving response to a weapons disturbance. A certified canine handler on the scene released his canine to assist with the apprehension of an erratic and noncompliant unsearched suspect, and allowed the canine to maintain the bite while the handler actively and physically attempted to secure and handcuff the suspect. Even assuming that the canine handler's use of force was unreasonable (or that there is a fact issue as to whether Bruss

---

[5] The district court erroneously refers to Wayne Schultz as "Schwartz" throughout the opinion.

10

and Schultz knew that the canine handler's use of force was unreasonable),[6] the relevant question for this qualified immunity appeal is whether existing precedent placed it beyond debate that bystander officers must intervene in those circumstances. It did not.

Overcoming qualified immunity requires clearly established law tailored to the specific context confronting the officers. **The Fifth Circuit has never held that officers must intervene during a canine-assisted apprehension.** And Thomas has never identified any precedent imposing such a duty—much less in circumstances like this, where the canine handler was attempting to gain control of the suspect, the suspect and vehicle had not yet been searched for weapons, and the bystander officers arrived mid-confrontation. Thomas's failure is dispositive.

Because no precedent clearly establishes that bystander officers must intervene during a canine-assisted apprehension, no reasonable officer would have understood that intervention was constitutionally required here. The district court therefore erred as a matter of law in denying Bruss and Schultz qualified immunity. This Court should reverse the portions of the district court's order denying summary judgment to Bruss and Schultz, and render judgment in favor of Bruss and Schultz on all claims asserted by Thomas.

---

[6] Bruss and Schultz concede neither. But for purposes of this interlocutory appeal only, Bruss and Schultz focus their arguments on whether clearly established law required them to intervene during Thomas's canine-assisted arrest.

11

## STANDARD OF REVIEW

This Court reviews the grant or denial of summary judgment *de novo*, applying the same standard as the district court. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007). A party can immediately appeal the denial of summary judgment based on qualified immunity. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). On interlocutory appeal, the Court has jurisdiction to "review the materiality of any factual disputes, but not their genuineness." *Hogan v. Cunningham*, 722 F.3d 725, 730–31 (5th Cir. 2013).

## ARGUMENT AND AUTHORITIES

### A.    Legal Standards for Qualified Immunity

The United States Supreme Court has long held that public servants are immune from suit unless their conduct violates "clearly established" federal law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The availability of immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231–32 (1991). Courts must determine (i) whether the plaintiff has described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 232–33 (2009). Courts may decide which of the two prongs should be decided first. *Id.* at 236. Either way, once a defendant invokes qualified immunity, the plaintiff has the burden to overcome it:

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this

12

defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

*Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992) (internal citations omitted). In other words, public officials are not required to prove that they did *not* violate clearly established federal rights in order for qualified immunity to apply; Fifth Circuit precedent requires plaintiffs to prove that they *did*. *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997); *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

To defeat qualified immunity, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the courts do not deny its protection unless existing precedent places the constitutional question "beyond debate." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)). The court must "ask whether the law so clearly and unambiguously prohibited [the official's] conduct that *every* reasonable official would understand that what he is doing violates [the law]." *Id.* (citing *Ashcroft*, 563 U.S. at 739) (emphasis in original).

The plaintiff must identify the violation of a "particularized" right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The plaintiff also must show that the "contours" of the right were "sufficiently clear that a reasonable official would understand that

13

what he is doing violates that right." *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004).

Ultimately, for an official to lose qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce*, 117 F.3d at 882 (citations omitted); *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525 (5th Cir. 1998). Accordingly, the qualified immunity standard "gives ample room for mistaken judgments." *Malley*, 475 U.S. at 343. "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citations omitted). Even in cases where the official is on notice that his conduct *might* be a violation, he is still entitled to immunity if the question is still open at the time that he acts. *See Forsyth*, 472 U.S. at 535.

**B.    The district court erred in denying Bruss and Schultz qualified immunity.**

In denying Bruss and Schultz qualified immunity, the district court failed to hold Thomas to his well-established burden of identifying an analogous case in which officers were found to have violated the Fourth Amendment by failing to intervene in a similar situation. The court also ignored cases demonstrating that the issue of whether a bystander officer has an obligation to physically or verbally intervene in a canine-

14

assisted apprehension is very much up for debate.  These errors compel this Court to reverse and render judgment in favor of Bruss and Schultz.

### 1.    Thomas failed to carry his burden of proving that Bruss and Schultz violated clearly established law.

Thomas has the burden to prove that, as of February 22, 2021, any reasonable officer would have known that the Constitution requires them to intervene in an active canine-assisted apprehension.  *See Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).  To meet his burden, Thomas must "'identify a case'—usually, a 'body of relevant case law'—in which 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'"  *Id.* (citing *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)).  Indeed, a court cannot deny qualified immunity unless it (i) identifies a case in which an officer acting under similar circumstances was held to have violated federal law, and (ii) explains why the case clearly proscribed the conduct at issue.  *Id.*

In the specific context of bystander liability,[7] this Court has held that qualified immunity should be granted when a plaintiff fails to identify clearly established law requiring an officer to intervene.  *Whitley*, 726 F.3d at 647 n.13 ("Even if bystander liability did apply, we nevertheless would be compelled to affirm the district court's judgment [] on the second prong of the qualified immunity analysis because Whitley

---

[7] An officer may be held liable for constitutional violations under a theory of bystander liability where the officer (i) knows that a fellow officer is violating an individual's constitutional rights; (ii) has a reasonable opportunity to prevent the harm; and (iii) nevertheless chooses not to act.  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

has failed to identify clearly established law requiring an officer immediately to intervene while engaged in covert surveillance of a perpetrator."); *see also Norman v. Ingle*, 151 F.4th 707, 714 (5th Cir. 2025) (noting that a plaintiff must do more than satisfy the elements of bystander liability because he "must also identify clearly established law requiring an officer to intervene under similar circumstances").

The Court's decision in *Joseph* illustrates this point. In that case, the district court concluded that factual disputes existed such that, under the plaintiffs' version of events, several officers were liable as bystanders for failing to intervene while two other officers allegedly inflicted twenty-six blunt-force injuries on the arrestee. *Joseph*, 981 F.3d at 345. But this Court explained that such a conclusion "does not defeat qualified immunity." *Id.* Instead, qualified immunity turned on whether the plaintiffs identified law clearly establishing that officers had a duty to intervene under similar circumstances:

> Plaintiffs have the burden to demonstrate that the law was clearly established—that, as of February 7, 2017, the date of their encounter with Joseph, any reasonable officer would have known that the Constitution required them to intervene. And we cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer.

*Id.* Ultimately, because the plaintiffs "did not identify a single case" providing such notice, this Court granted qualified immunity to the nine bystander officers. *Id.*

Even more to the point, in *Sligh*, this Court held that a canine officer's decision to deploy his canine constituted an excessive use of force, but also held that a bystander

16

officer was nevertheless entitled to qualified immunity because the plaintiff failed to identify law clearly establishing that the bystander officer violated the Constitution by failing to intervene:

> We next consider Sligh's failure-to-intervene/bystander liability claim against Montes. To overcome Montes's qualified immunity defense, Sligh must identify law clearly establishing that Montes's actions violated her constitutional rights, i.e., she must show that any reasonable officer would have known that the Constitution required them to intervene. She has not done so. **We accordingly need not and do not reach the question of whether Montes violated Sligh's constitutional rights**.

*Sligh v. City of Conroe*, 87 F.4th 290, 301 (5th Cir. 2023) (citations and quotations omitted) (emphasis added).

In this case, the district court failed to hold Thomas to his burden of proof, and denied qualified immunity notwithstanding the fact that Thomas failed to identify a single case holding that officers acting *under similar circumstances* had a constitutional duty to intervene. Thomas instead collapsed the qualified immunity inquiry into the elements of bystander liability, arguing that, because Johnson's conduct allegedly constituted excessive force, Bruss and Schultz necessarily had a duty to intervene. [ROA.1891; ROA.4038; ROA.4050-4056; ROA.4170-4712]. But that is not the law. Even assuming an underlying constitutional violation occurred (which Bruss and Schultz do not concede), Thomas must still identify precedent clearly establishing that bystander officers were required to intervene under comparable circumstances. *Joseph*, 981 F.3d at 345; *Norman* 151 F.4th at 714. He did not.

17

The district court generously interpreted Thomas's briefing as identifying clearly established law, but the cases that Thomas (and the court) relied on do not remotely establish a duty to intervene during an active canine-assisted apprehension. Indeed, most of the cases do not involve canine deployments—and several do not involve bystander liability at all.

For example, Thomas's reliance on *Trammell v. Fruge* and *Deville v. Marcantel* fails outright. In *Trammell*, the Court did not analyze a failure-to-intervene claim because the plaintiff waived the argument by raising it for the first time on appeal. *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). *Deville* only addressed whether officers themselves used excessive force. *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009). Neither decision addresses bystander liability, and neither involves the use of a canine. Accordingly, neither could have provided fair notice that Bruss and Schultz had a duty to intervene in an active canine-assisted apprehension.

Thomas's reliance on *Timpa v. Dillard* is similarly misplaced because, although *Timpa* addressed bystander liability, it involved dramatically different circumstances. There, officers watched and laughed as an officer asphyxiated a restrained detainee by kneeling on his back for approximately fourteen minutes. *Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021). A fourteen-minute restraint bears little resemblance to the rapidly evolving circumstances of a forty-three-second canine-assisted apprehension. *Timpa* therefore cannot constitute "fair warning" that the Constitution required Bruss and Schultz to intervene under the circumstances present in this case.

18

The only case Thomas cites that involves a police canine is *Cooper v. Brown*. But *Cooper* only addressed whether the deploying officer's use of the canine constituted excessive force. *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016). It did not involve bystander liability. *Id.* And in *Sligh*, this Court expressly rejected reliance on *Cooper* as clearly establishing a constitutional duty for bystander officers to intervene in a canine apprehension:

> Sligh relies entirely on *Cooper* as clearly establishing the law relating to Montes's actions. But this reliance on *Cooper* is misplaced because *Cooper* is wholly inapplicable to a bystander liability theory. The facts and analysis in *Cooper* concerned only the conduct of the specific officer who controlled the dog. There was consequently no discussion in *Cooper* of whether another officer on site would be required to intervene as a bystander. Thus, *Cooper* cannot clearly establish that Montes—a bystander—violated Sligh's constitutional rights by failing to intervene. Sligh points to no other case clearly establishing the law on this issue. Accordingly, Montes is entitled to qualified immunity on Sligh's bystander liability claim.

*Sligh*, 87 F.4th at 301; *see also id.* ("We [] need not and do not reach the question of whether Montes violated Sligh's constitutional rights."). *Cooper* therefore cannot supply the clearly established law that Thomas needs to overcome qualified immunity.

*Joseph* also does not satisfy Thomas's burden. As explained above, in *Joseph*, this Court granted qualified immunity to bystander officers precisely because the plaintiffs failed to identify precedent clearly establishing a duty to intervene—even where other officers engaged in excessive force, and where the arrestee died after sustaining twenty-six blunt-force injuries while pleading for help and reiterating that he was not armed.

19

*Joseph*, 981 F.3d at 345. *Joseph* does not clearly establish a duty to intervene in a canine-assisted apprehension similar to Thomas's.

The district court's decision to deny qualified immunity focused on this Court's decisions in *Hale v. Townley* and *Austin v. City of Pasadena*,[8] even though Thomas did not meaningfully rely on those decisions to argue that clearly established law required Bruss and Schultz to intervene. Regardless, neither case clearly establishes such a duty. In *Hale*, the bystander officers were found liable because they "stood by and laughed" while another officer violently assaulted the plaintiff—slamming him against a car, kicking him, ramming his fist into the plaintiff's testicles, and repeatedly attempting to smash the plaintiff's head into the vehicle. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). And in *Austin*, the bystander officers actively participated in restraining the plaintiff, who was dragged across a concrete floor, tased up to ten times, and pinned to the ground. *Austin v. City of Pasadena*, 74 F.4th 312, 330 (5th Cir. 2023). Another officer arrived during the incident and immediately joined in restraining the plaintiff. *Id.*

*Hale* and *Austin* do not involve circumstances similar to those presented here. Neither case involves a police canine. Neither case addresses an officer's duty to intervene during the brief, dynamic period of a canine-assisted apprehension—

---

[8] On several occasions, the Supreme Court has seemingly questioned whether controlling circuit precedent can constitute clearly established federal law. *See Kisela v. Hughes*, 584 U.S. 100, 106 (2018) ("The Court of Appeals made additional errors in concluding that its own precedent clearly established that Kisela used excessive force. To begin with, even if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.") (cleaned up); *see also City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 614 (2015); *Carroll v. Carman*, 574 U.S. 13, 17 (2014); *Reichle v. Howards*, 566 U.S. 658, 665–66 (2012).

especially when, throughout the period of the dog bite, the canine handler is actively attempting to restrain and handcuff the suspect (as opposed to, *e.g.*, slamming the suspect against a car, kicking the suspect, ramming fists into the suspect's testicles, attempting to smash the suspect's head into a vehicle, dragging the suspect, or repeatedly tasing the suspect).  Johnson did not engage in activity similar to the officers who used excessive force in *Hale* and *Austin*, nor did Bruss and Schultz engage in activity similar to the bystander officers in those cases.  Ultimately, because *Hale* and *Austin* involve materially different uses of force and fundamentally different circumstances, they cannot clearly establish that Bruss and Schultz had a constitutional duty to intervene during the forty-three-second canine-assisted apprehension at issue in this case.

At most, these cases address the general principles of bystander liability.  But both this Court and the Supreme Court have repeatedly warned against defining clearly established law at such a high level of generality:

> [I]t is obviously beyond debate the Fourth Amendment prohibits certain unreasonable seizures.  Yet that is not enough.  The Supreme Court has repeatedly told courts not to define clearly established law at that high level of generality.  Rather, the dispositive question is whether the violative nature of *particular* conduct is clearly established.  That is because qualified immunity is inappropriate only where the officer had "fair notice"—in light of the specific context of the case, not as a broad general proposition—that his *particular* conduct was unlawful.

*Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (citations and quotations omitted); *see also Kisela*, 584 U.S. at 105; *Whitley*, 726 F.3d at 647 n.13; *Joseph*, 981 F.3d at 345; *Sligh*, 87 F.4th at 301.  This warning is particularly significant in excessive

21

force cases, where qualified immunity is "especially difficult" to overcome because "[t]his is an area of law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Morrow*, 917 F.3d at 876 (quoting *Kisela*, 584 U.S. at 104). After all, "excessive force claims often turn on split-second decisions to use [] force. **That means the law must be *so* clearly established that—in the blink of an eye []—every reasonable officer would know it immediately**." *Id.* (citations and quotations omitted) (emphasis added).

Accordingly, the relevant question is whether precedent clearly established a duty for officers to intervene in the specific context presented here: an active canine-assisted apprehension. Thomas has never identified such a case—likely because the Fifth Circuit has never held that officers have a constitutional duty to intervene in canine-assisted arrests. The lack of an analogous case matters because the situation that Bruss and Schultz encountered on February 22, 2021 does not meet the "sky high" standard for establishing "the rare obvious case for which no similar case is needed." *Joseph*, 981 F.3d at 337. If it were obvious, this Court would not have faulted the plaintiff in *Sligh* for failing to identify "law clearly establishing that [the bystander officer]'s actions violated her constitutional rights, i.e., [] that any reasonable officer would have known that the Constitution required them to intervene [in a canine-assisted seizure]." *Sligh*, 87 F.4th at 301.

22

The district court erroneously excused Thomas's failure to identify a case in which an officer *acting under similar circumstances* was held to have violated the Fourth Amendment. This Court should not. It should reverse the district court's denial of qualified immunity, and render judgment in favor of Bruss and Schultz.

**2.     Existing law demonstrates that Bruss and Schultz are entitled to qualified immunity.**

The cases within the Fifth Circuit that analyze bystander liability in the context of canine-assisted apprehensions demonstrate that there is no clearly established duty to intervene. As noted above, this Court held in *Sligh* that a canine handler used excessive force by releasing a canine on a suspect who (i) was not suspected of any crime, (ii) did not pose an immediate safety threat, and (iii) was in need of emergency medical intervention due to self-harm, but it nevertheless granted the bystander officer qualified immunity because the plaintiff failed to identify any law clearly establishing a constitutional duty to intervene in those circumstances. *Sligh*, 87 F.4th at 299–301. In doing so, the Court expressly rejected the plaintiff's reliance on *Cooper*, which addressed the excessive force of a canine, but did not involve bystander liability. *Id.* The Court then declined to reach the question of whether the bystander officer violated the suspect's constitutional rights by failing to intervene. *Id.*

Similarly, in *Walton*, the United States District Court for the Northern District of Mississippi granted summary judgment for an officer accused of failing to intervene after another officer deployed a canine that bit the plaintiff. *Walton v. Tunica Cnty., Miss.*,

23

648 F. Supp. 3d 780 (N.D. Miss. 2023). The court held that the plaintiff failed to identify any clearly established law requiring intervention and instead relied solely on the general elements of bystander liability:

> In relying upon [the] general principles of bystander liability, rather than on case law closely on point, plaintiff has committed the error which has doomed countless constitutional claims under the qualified immunity analysis.

*Id.* at 797. The court further emphasized that the canine was under the control of a trained handler, making it less obvious that another officer should intervene. *Id.*

And in *White*, the United States District Court for the Southern District of Texas found that bystander liability did not apply because the canine was under the direct control of its handler, who alone could issue commands to the canine. *White v. Calvert*, 2021 WL 6112791, at *15 (S.D. Tex. Dec. 27, 2021). The court also noted that there are no cases addressing whether an officer can be held liable for failing to intervene to remove a canine from a bite:

> The bystander officer was not the dog handler and had no knowledge of how to command or direct the dog's actions once released. No case addresses whether merely requesting the release of a dog by itself can result in bystander liability when the officer testifies that he did not know that the request would necessarily result in one or more bites. **None of the cases address whether an officer may be liable under a theory of bystander liability for failing to take actions to remove a biting canine from a suspect, even if the dog cannot respond to verbal commands from any officer other than its handler.**

*Id.* at *17 (emphasis added).

Here, because the canine was under Johnson's control, it was not "obvious" that Bruss and Schultz were required to intervene, particularly given that no case has ever directed officers to do so—verbally or physically. Indeed, these cases make clear that officers are not expected to physically intervene in dog bite incidents, a point the district court itself acknowledged. [ROA.5345]. And when it comes to whether an officer is required to verbally intervene in a canine-assisted apprehension, the law is not settled (and certainly is not clearly established). This legal uncertainty compels granting Bruss and Schultz qualified immunity.

Because there is no law clearly establishing that the Constitution required Bruss and Schultz to physically or verbally intervene in Johnson's canine-assisted efforts to gain control of and handcuff Thomas, they are entitled to qualified immunity. The Court should reverse the lower court's ruling denying qualified immunity, and render judgment in favor of Bruss and Schultz.

## CONCLUSION AND PRAYER

Appellants Eric M. Bruss and Wayne Schultz are entitled to qualified immunity on Kerry Lee Thomas's constitutional claims. Bruss and Schultz respectfully request that this Court reverse the lower court's denial of qualified immunity, render judgment in their favor, grant them their costs of appeal, and grant them all such other and further relief, both at law and in equity, to which they have shown themselves entitled.

25

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Stephanie A. Hamm
    Stephanie A. Hamm
    Texas Bar No. 24069841
    shamm@thompsonhorton.com
    Alexa Gould
    Texas Bar No. 24109940
    agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

ATTORNEYS FOR APELLANTS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been forwarded to the following counsel and/or parties of record by electronic service on March 23, 2026:

Brittany Francis
PEOPLES' COUNSEL
1900 W. Gray Street
P.O. Box 130442
Houston, Texas 77219
Telephone: (713) 487-9809

Alessandro Clark-Ansani
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Telephone: (202) 844-4975

          By: /s/ Stephanie A. Hamm
               Stephanie A. Hamm

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5TH CIR. R. 32.2 and .3, the undersigned certifies this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7).

1.     EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. R. 32.2, THE BRIEF CONTAINS (select one):

    A.        6,184   words, OR

    B.     _____ lines of text in monospaced typeface.

2.     THE BRIEF HAS BEEN PREPARED (select one):

    A.     in proportionally spaced typeface using:

Software Name and Version:     **Microsoft Word 2506**

in (Typeface Name and Font Size): **Garamond 14 pt**

OR

    B.     in monospaced (nonproportionally spaced) typeface using:

Typeface name and number of characters per inch:

3.     THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

By:   /s/ Stephanie A. Hamm       
      Stephanie A. Hamm