No. 25-20590

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

KERRY LEE THOMAS,

*Plaintiff – Appellee*

*v.*

ERIC M. BRUSS; WAYNE SCHULTZ,

*Defendants – Appellants*

---

On Appeal from the
United States District Court for the Southern District of Texas
4:23-CV-662

---

## BRIEF OF APPELLEE KERRY THOMAS

---

BRITTANY FRANCIS
brittany@peoplescounsel.org
PEOPLES' COUNSEL
1900 W. Gray Street, P.O Box 130442
Houston, Texas 77219
Telephone: (713) 487-9809

ALESSANDRO-CLARK ANSANI
alessandro@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Avenue, N.W. Suite 800
Washington, DC 20009
Telephone: (202) 844-4975

Counsel for Plaintiff-Appellee

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellee: | Kerry Lee Thomas |
| Appellate Counsel for Appellant: | Brittany Francis<br>PEOPLES' COUNSEL<br><br>Alessandro Clark-Ansani<br>CIVIL RIGHTS CORPS |
| Appellants: | Eric M. Bruss<br>Wayne Schultz |
| Counsel for Appellants: | Stephanie A. Hamm<br>Alexa Gould<br>Celena Vinson<br>THOMPSON & HORTON LLP<br>3200 Southwest Freeway, Suite 2000<br>Houston, Texas 77027<br>Telephone: (713) 554-6714<br>Facsimile: (713) 583-8884 |

/s/ Alessandro Clark-Ansani
Attorney of record for Plaintiff-Appellee

ii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee Kerry Thomas ("Mr. Thomas") seeks affirmation of the district court's decision to deny qualified immunity to Defendant Officers Eric M. Bruss, Wayne Schultz, and Robert Johnson (deceased[1]) based upon clearly established law. Because Defendant-Appellants fail to grapple with binding precedent, mischaracterize the undisputed material facts, and improperly raise the bar for bystander liability in this Circuit, Mr. Thomas respectfully requests oral argument to assist with the decisional process.

---

[1] In May 2021, then-Sergeant Robert Johnson confessed to sexually abusing multiple children, at least one of whom he reportedly drugged, in coordination with a dispatcher and fellow deputy at Precinct 1 of the Harris County Constable's Office. After a six-hour standoff with police, Johnson killed himself. ROA.1882. As such, we brought suit against the Estate of Robert Johnson, the successor in interest liable to Mr. Thomas for excessive force.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .................................................................................... iv

TABLE OF AUTHORITIES ................................................................................1

JURISDICTIONAL STATEMENT ......................................................................3

STATEMENT OF THE ISSUES...........................................................................4

STATEMENT OF THE CASE...............................................................................4

    I.   Material Facts .........................................................................................5

        A.   Defendant-Appellants responded to a noise disturbance and had no reasonable basis to believe Mr. Thomas was armed. ............................5

        B.   Defendant-Appellants encountered Mr. Thomas unarmed and compliant and had no reasonable basis to conclude he posed a threat...8

        C.   When Officer Johnson released his canine on Mr. Thomas, Defendant-Appellants had observed him compliant, unarmed, and prone on the ground for nearly two minutes prior.................................................10

        D.   Defendant-Appellants had the duty and opportunity to intervene, but chose not to do so. ...............................................................................12

    II.  Procedural History.................................................................................15

SUMMARY OF THE ARGUMENT ....................................................................16

STANDARD OF REVIEW ..................................................................................19

ARGUMENT .......................................................................................................19

    I.   The District Court Correctly Held—and Defendant-Appellants Do Not Challenge—that Officer Johnson Used Excessive Canine Force Against Mr. Thomas. ...........................................................................................19

        A.   *Cooper*, *Timpa*, *Trammell*, and *Deville* clearly established that the force used against Mr. Thomas was excessive....................................20

        B.   Defendant-Appellants have forfeited any claim that the force used against Mr. Thomas was not excessive. .............................................24

II. Defendant-Appellants Had the Opportunity to Intervene, Yet Failed to Do So. ...............................................................................................25

III. At the Time Mr. Thomas Was Attacked, It Was Clearly Established that Defendant-Appellants Schultz and Bruss Had a Duty to Intervene. ............27

    A. Defendant-Appellants were on notice of their duty to intervene in excessive force, regardless of the type of force used. ..........................28

    B. *Hale*, *Timpa*, and *Austin* put Defendant-Appellants' on notice of their duty to intervene under these specific circumstances. .........................31

    C. This Court has never required plaintiffs to proffer force-specific case law to establish a duty to intervene. ....................................................33

    D. Mr. Thomas does not and need not rely on *Cooper* to establish all three elements of bystander liability...........................................................37

IV. Defendant-Appellants' Cited Authority Does Not Alleviate Them of Their Duty to Intervene. ......................................................................................38

    A. Unlike Mr. Thomas, the Plaintiffs in *Sligh*, *Joseph*, and *Norman* failed to proffer any authority on bystander liability......................................39

    B. Unlike Mr. Thomas, the Plaintiffs in *White* and *Walton* failed to establish that bystanders had an opportunity to intervene or that the force witnessed was excessive..............................................................41

    C. Unlike Defendant-Appellants, the bystander officers in *Whitley* were not present when force was used and, nevertheless, still took steps to intervene. ...................................................................................43

V. Qualified Immunity Does Not Apply to Claims Brought Pursuant to 42 U.S.C. § 1983 ............................................................................................45

CONCLUSION..........................................................................................................46

CERTIFICATE OF SERVICE .................................................................................47

CERTIFICATE OF COMPLIANCE........................................................................48

# TABLE OF AUTHORITIES

**Cases**

*Amador v. Vasquez*, 961 F.3d 721 (5th Cir. 2020) ...................................................22

*Ambler v. Nissen*, 116 F.4th 351 (5th Cir. 2024).......................................... 30, 34, 35

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................28

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...........................................................28

*Austin v. City of Pasadena*, 74 F.4th 312 (5th Cir. 2023)............................... passim

*Banks v. Herbrich*, 90 F.4th 407 (5th Cir. 2024) ....................................................30

*Baxter v. Harris*, No. 15-6412, 2016 WL 11517046 (6th Cir. Aug. 30, 2016).......36

*Boyd v. McNamara*, 74 F.4th 662 (5th Cir. 2023) ..................................................30

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008)..........................................................23

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015)....................................... passim

*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) ............................................... passim

*Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016) ........................................... passim

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ...................................... 17, 24

*Escobar v. Montee*, 895 F.3d 387 (5th Cir. 2018) ..................................................20

*Graves v. Zachary*, 277 F. App'x 344 (5th Cir. 2008) ...........................................22

*Groh v. Ramirez*, 540 U.S. 551 (2004) ...................................................................30

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) ................................................ passim

*Hamilton v. Kindred*, 845 F.3d 659 (5th Cir. 2017) ............................. 27, 30, 33, 35

*Hankins v. Wheeler*, 109 F.4th 839 (5th Cir. 2024)................................................46

*Hope v. Pelzer*, 536 U.S. 730 (2002) .............................................................. 17, 28

*Jackson v. Ladner*, 626 F. App'x 80 (5th Cir. 2015)..............................................19

*Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) . passim

*Kitchen v. Dallas Cnty.*, 759 F.3d 468 (5th Cir. 2014)...........................................33

*Malone v. City of Fort Worth, Tex.*, No. 4:09-CV-634-Y, 2014 WL 5781001 (N.D. Tex. Nov. 6, 2014).......................................................................................6

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................3

*Norman v. Ingle*, 151 F.4th 707 (5th Cir. 2025) .......................................... 39, 40, 41

*Norris v. Causey*, 869 F.3d 360 (5th Cir. 2017) .....................................................25

*Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000) .........................36

*Rainwater v. Sikes*, No. 4:17-CV-967-A, 2018 WL 1916566 (N.D. Tex. Apr. 23, 2018).......................................................................................................21

*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023) ......................................................45

*Rollins v. Home Depot USA*, 8 F.4th 393 (5th Cir. 2021) ......................................25

*Sligh v. City of Conroe*, 87 F.4th 290 (5th Cir. 2023) ................................ 37, 38, 39

*Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021) ............................................ passim

*Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017); ...................................... 17, 21, 24

*Walton v. Tunica Cnty., Miss.*, 648 F. Supp. 3d 780 (N.D. Miss. 2023) .................41

1

*White v. Calvert*, No. CV H-20-4029, 2021 WL 6112791 (S.D. Tex. Dec. 27, 2021) ........................................................................................ 41, 42, 43

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ................................. 43, 44

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ..................................................... 28

**Statutes**

28 U.S.C. § 1291 .......................................................................................... 3

42 U.S.C. § 1983 ................................................................... 4, 29, 45, 46

**Other Authorities**

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023) .................................................................................. 45

## JURISDICTIONAL STATEMENT

This is an appeal brought by Defendant-Appellants Eric M. Bruss and Wayne Schultz challenging the district court's denial of qualified immunity and summary judgment on December 2, 2025. ROA.5363. Although Plaintiff-Appellee Mr. Thomas agrees with Defendant-Appellants that appellate jurisdiction is proper under 28 U.S.C. § 1291, *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), it bears emphasis that this Court's jurisdiction is limited to questions of law and does not extend to the resolution of disputed issues of material fact. Instead, this Court must resolve all material factual disputes in the non-movant's favor. In *Cole v. Carson*, this Court explained:

> We lack jurisdiction to resolve the genuineness of any factual disputes and consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment. Like the district court, we must view the facts and draw reasonable inferences in the light most favorable to the plaintiff and ask whether the defendant would be entitled to qualified immunity on those facts. The Supreme Court has summarily reversed this court for failing to take the evidence and draw factual inferences in the non-movants' favor at the summary judgment stage. In doing so, the Court emphasized that the requirement is no less binding even when . . . a court decides only the clearly-established prong of the standard.

935 F.3d 444, 452 (5th Cir. 2019), *as revised* (Aug. 21, 2019) (quotations and citations omitted).

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held that officers violate clearly established law by failing to intervene as a police dog continuously bites a person whom they observed—for two minutes prior to the attack—to be compliant, prone, with arms outstretched, and with no sign of access to a firearm.

2. Whether Fifth Circuit precedent clearly establishes that officers have a duty to intervene in force that is clearly established to be excessive, regardless of the type of force used, such that qualified immunity offers Defendant-Appellants no shield.

## STATEMENT OF THE CASE

This interlocutory appeal arises from the denial of qualified immunity on summary judgment in a § 1983 excessive force case. Here, Defendant-Appellants stood by as a third officer unleashed a police canine on a compliant, prone, and unarmed individual: Mr. Thomas. The question is whether Defendant-Appellants had fair notice that the force being used was unconstitutional and that they could not stand by while it continued. The district court correctly held that the answer is yes: a reasonable jury could not only deem the canine deployment excessive but also determine that Defendant-Appellants had a reasonable opportunity and duty to intervene.

4

## I.     Material Facts

Defendant-Appellants' mischaracterize the factual record by: 1) affirmatively misstating key facts; 2) omitting undisputed material facts they dislike; and 3) making claims that are heavily disputed, and at times, wholly uncorroborated. The district court found that there were "genuine factual disputes material to determining qualified immunity" as to every element of Mr. Thomas's claims against Defendant-Appellants. ROA.5327.

Because this Court's jurisdiction is limited to pure questions of law, without the power to resolve factual disputes, it must view the evidence in the light most favorable to Mr. Thomas. *See Cole*, 935 F.3d at 452; *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020) (holding that "in qualified immunity cases, which often involve competing versions of events, [this Court] take[s] the plaintiff's version of the facts" as true) (citation and quotations omitted). The facts below reflect that standard, foregrounding the *undisputed* material facts, highlighting where Defendant-Appellants' account departs from the record, and noting where disputes must be resolved in Mr. Thomas' favor.

A. <u>Defendant-Appellants responded to a noise disturbance and had no reasonable basis to believe Mr. Thomas was armed.</u>

On February 22, 2021, at approximately 7:15 p.m., officers were dispatched to a reported disturbance outside a residence on Capstone Drive in Houston.

5

ROA.5319. The 911 caller reported that two men–Mr. Thomas and Mr. Gray–were outside his home yelling and that *he*–the homeowner–had a weapon. *Id.*

Defendant-Appellants repeatedly claim they were called to a "disturbance with a weapon" or "weapons disturbance," to obscure the actual information conveyed to responding officers. There is zero evidence that dispatch said any variant of the words "weapons disturbance" aloud, to Defendant-Appellants or otherwise. ROA.5335, 1910-11. Defendant-Appellants appear to be referring to the CAD Report "event log" reflecting that, after learning the homeowner had his weapon out, dispatch entered the field code "Disturbance weapon" for the nature of the event on their computer. ROA.5335. As recognized by the district court, this coding is not information that Defendant-Appellants had access to leading up to, or during, the canine attack[2]. *Id.*

The district court's summary judgement opinion confirms this sequence:

The video footage and incident logs show that dispatch told the officers that the reportee, not the suspects, had a firearm. (*See, e.g.,* Docket Entry No. 118-3 at 19:20:47 ("Update: reportee has his weapon out."); Docket Entry No. 118-2 at 5 ("reportee . . . had his firearm in his possession"); Docket Entry No. 118-7 at 291:9–10 ("It was confirmed that the homeowner had a weapon by the homeowner."); Docket Entry No. 115-3 at 5 (confirming twice that "RPT HAS WEAPON OUT"))."

ROA.5334.

---

[2] Information known to the officers at the time force was used is the only information relevant to Fourth Amendment analysis. *See, e.g., Malone v. City of Fort Worth, Tex.*, No. 4:09-CV-634-Y, 2014 WL 5781001, at *14 (N.D. Tex. Nov. 6, 2014) (discounting evidence that the plaintiff "had just committed the very severe crime of attempted murder" because, at the time Defendants used force, they were only aware of a misdemeanor traffic violation).

Dispatch made clear, in response to specific questioning from responding officers, that the weapon belonged to the reporting party, not to Mr. Thomas or Mr. Gray. ROA.5334. Johnson confirmed that same understanding over the radio when he asked: "Are the suspects still there? If they're not still there, tell him [the reportee] to put away his weapon." ROA.5319.

Dispatch never stated that Mr. Thomas was armed, no officer ever reported seeing a weapon on Mr. Thomas, and no weapon was ever recovered from Mr. Thomas or the vehicle. ROA.5324. While Defendant Bruss claims that dispatch reported to him that the suspects had a gun, "the video evidence reflects" that "Bruss was never told that the suspects were armed," ROA.5335, and Defendant Schultz's deposition testimony confirms that dispatch never communicated as much to Bruss. ROA.908–9.

Accordingly, the district court found a "genuine factual dispute as to whether it was reasonable for the officers to believe that Thomas had a firearm." ROA.5334-35. Because that dispute must be resolved in Mr. Thomas's favor for qualified immunity purposes, the operative facts on appeal are that Defendant-Appellants did not have a reasonable basis to believe he was armed. *Cole*, 935 F.3d at 452.

B. <u>Defendant-Appellants encountered Mr. Thomas unarmed and compliant and had no reasonable basis to conclude he posed a threat.</u>

Officer Johnson was the first officer to arrive. He exited his vehicle with his gun drawn and immediately began aiming it at Mr. Thomas and Mr. Gray while shouting commands. ROA.5319–20. Mr. Thomas, seated in the passenger seat of the vehicle, raised his hands above his head in response. ROA.5320.

Mr. Thomas then exited the vehicle and stood facing officers with his hands raised, remaining in a visible surrender position. ROA.5320. He did not attempt to flee, conceal anything, or threaten anyone. *Id*. Instead, he made distressed statements, called out to God for help, and pleaded with officers while remaining in place. *Id*. Defendant-Appellants Bruss and Schultz arrived, and began screaming commands rapidly and often inconsistently, including overlapping and conflicting directions to the "driver" and "passenger", at times applying those labels to the wrong person. ROA.5320–21, 1914–15. By the time Defendant-Appellant Bruss arrived, Mr. Thomas had already maintained this surrender position—with hands raised and visible—for approximately ninety seconds. ROA.5321, 1914. Despite the chaos, when instructed to move, Mr. Thomas stepped forward as directed; when instructed to stop, he stopped; and when ordered to the ground, he immediately complied. ROA.1914–15, 1916. At no point did Mr. Thomas make any movement suggesting that he was attempting to access a weapon. ROA.5330.

8

Simultaneously, Mr. Gray complied with instructions to walk backward toward the officers with his hands up and was eventually handcuffed and detained in the back of a police car. ROA.5322. After arresting Mr. Gray, the officers turned their attention back to Mr. Thomas, who had been complying with the officers' orders to lay prone on the ground for nearly three minutes, with his face resting on the grass and his arms out to his sides. ROA.5323, 1919. Defendant-Appellant Schultz, who was standing behind Officer Johnson and his canine, shouted, "You in the gray, step up, do it now!" ROA.5323. Mr. Thomas remained motionless with his face pinned to the floor as Schultz repeated himself. ROA.1919. Only when Officer Johnson chimed in did it appear to register to Mr. Thomas that Officer Johnson and Schultz were speaking to him, since for the last several minutes the officers had been speaking to Mr. Gray. *Id*. As Officer Johnson shouted, "This is your last chance, or I'm gonna send the dog after you!" ROA.5323. Mr. Thomas began to raise his head from the ground. *Id*. Schultz continued shouting commands to "step up" and "stand up." ROA.1919. In response, Mr. Thomas began to move his lower body, readying himself to get up. ROA.5323. Officer Johnson then said, "Last warning, or I'm gonna send the dog!" before releasing his canine to bite Mr. Thomas. *Id*.

Only twenty seconds passed between the time Defendant-Appellant Schultz gave his first order and the time Officer Johnson released his canine. ROA.1919. Only twelve seconds passed between when Mr. Thomas lifted his head and when

9

Officer Johnson released his canine. *Id*. Only four seconds passed between when Mr.

Thomas attempted to stand up and when Officer Johnson released his canine. *Id*.

Defendant-Appellants claim that, even though Mr. Thomas had complied with

the officers' orders to lay on the ground with his arms outstretched for nearly three

minutes, he was "noncompliant" because he did not follow repeated commands to

stand. The district court correctly rejected that framing, holding that "[a]t most,

Thomas passively resisted the officers' order, which is not a license to use physical

force." ROA.5330. Instead, the court found a genuine dispute as to whether Mr.

Thomas "outright refused to comply" or instead "was trying to comply [with the

order to stand] but ultimately did not or could not do so." ROA.5333.

Because any factual dispute on this front must be resolved in Mr. Thomas's

favor for qualified immunity purposes, the operative facts on appeal are that he was

compliant in trying to follow the order to stand up. *Cole*, 935 F.3d at 452.

C. <u>When Officer Johnson released his canine on Mr. Thomas, Defendant-Appellants had observed him compliant, unarmed, and prone on the ground for nearly two minutes prior.</u>

Mr. Thomas had been lying prone on the ground for "several" minutes before

the officers ordered him to stand up and Johnson released the dog to attack him.

ROA.5330. Bruss observed the full duration of Mr. Thomas's prone compliance

(approximately three minutes), and Schultz observed him in that position for

approximately two minutes after his arrival. Mr. Thomas made no attempt to flee or resist. ROA.5330–31.

The district court noted that, in the minutes leading up to the attack, Mr. Thomas "posed no threat to any officer" and showed "no sign of access to a firearm." ROA.5329. Defendant-Appellants' own testimony confirms that Mr. Thomas did not physically resist arrest and did not make any threats toward officers. ROA.1923, 1925. Instead, he was "lying prone and still on the ground throughout the entire encounter, with his hands and legs spread, with no visible access to a weapon, and without making any visible attempt to access any potentially hidden weapon." ROA.5330.

Despite these facts, Johnson directed his dog to charge at Mr. Thomas, sink its teeth into Mr. Thomas's arm and continue biting him as he cried out in pain. ROA.1920. And despite Mr. Thomas's lack of resistance, all three officers allowed the dog to gnaw at Mr. Thomas for approximately 45 seconds while Johnson put him in handcuffs. ROA.5342.

Because Mr. Thomas had been lying on the ground "for several minutes" before the canine was deployed, the court held that a reasonable jury could conclude the officers had "enough time to realize" that releasing a police dog under these circumstances was clearly excessive. ROA.5330–31.

11

On these facts, and as discussed below, *infra* Section I, Defendant-Appellants had no reasonable basis to conclude that force—let alone a canine mauling—was warranted.

D. <u>Defendant-Appellants had the duty and opportunity to intervene, but chose not to do so.</u>

Defendant-Appellant Schultz and Officer Johnson approached Mr. Thomas as the dog tore into his upper arm. ROA.1920. Officer Johnson holstered his gun, saying, "You think we're fucking around, don't you?" *Id*. Schultz stood approximately ten feet away and continued to aim his taser at Mr. Thomas while the dog bit him. *Id*. Johnson allowed the canine to continue biting Mr. Thomas while he climbed on top of him; as the canine yanked repeatedly on Mr. Thomas' arm, Johnson ordered him to put his hands behind his back. ROA.1920. Mr. Thomas was crying out and wincing from the pain. ROA.1921. In response, Johnson told Mr. Thomas to "shut up." *Id*. Bruss said, "As soon as he gets you handcuffed, he'll get the dog off you" *Id*. Bruss, who had also approached and stood close by observing, then shouted, "Stop moving around." *Id*. Although Mr. Thomas's legs appeared to periodically move involuntarily from the pain, he did not struggle against Johnson or prevent him from placing handcuffs on his wrists, even as Johnson's canine continued to tear at his arm. ROA.1921.

After permitting the dog to bite Mr. Thomas for approximately 45 seconds, Johnson began to remove the dog from Mr. Thomas' mangled arm. ROA.1921.

12

Johnson then allowed his canine to lunge at Mr. Thomas once again and bite his pant leg before removing the dog from Mr. Thomas for good. *Id*. Afterward, Bruss ordered Mr. Thomas to roll over onto his stomach, threatening, "You ain't seen nothing yet!" *Id*.

Defendant-Appellant Bruss and Johnson proceeded to cheer and praise the dog with exclamations of "Good boy!", "Yeah!", and "Woohoo!" ROA.1921. Both then joked about the incident. ROA.1922. As EMS was assisting Mr. Thomas, Lieutenant Moncrief—Johnson's supervisor—followed Johnson back to his car and asked him how his dog was. *Id*. Johnson responded, "Full," pausing for comedic effect before adding, "and satisfied" *Id*. The two shared a laugh. *Id*. Moments later, Johnson called Bruss over to confirm the spelling of Mr. Thomas's name. Bruss told Johnson, "Kerry with a 'K'" ROA.1922. Johnson asked, "Common spelling?" (*Id.* at 19:52:44) Bruss responded, "I don't know, the way he's yelling, it could be K-E-R-R-I," alluding to the more feminine spelling of the name. *Id*.

On these facts, the district court found genuine and material disputes as to whether Defendant-Appellants Schultz and Bruss had an opportunity to intervene in the canine's prolonged attack on Mr. Thomas. ROA.5340–41.

As to Defendant Schultz's opportunity to intervene, the district court held that, "a jury could find (or not find) Schultz liable for acquiescing to the dog's excessively long bite of Thomas." ROA.5341. The Court noted that Schultz, "admitted that he

13

had the opportunity to object to the prolonged bite . . . [and] testified in his deposition that he could have objected and asked Johnson to remove the dog from the bite." ROA.5341–42. The district court further relied on video evidence corroborating that testimony, showing Schultz standing behind or beside Johnson, only a few feet away, observing the encounter as it unfolded, and remaining in that position for approximately 45 seconds while the dog continued biting Mr. Thomas as he lay on the ground. ROA.5342.

As to Defendant Bruss's opportunity to intervene, the district court held that "a jury could find (or not find) Bruss liable for acquiescing to and encouraging the dog to keep his bite hold on Thomas while he was clearly subdued and unable to flee or resist, for almost forty seconds." ROA.5340. The court further found that, "Bruss saw Johnson subdue and restrain Thomas at 19:27:31, nearly 45 seconds before Johnson told the dog to release his bite," ROA.5341, and that "in his deposition, Bruss admitted that he had a reasonable opportunity to tell Johnson to remove the dog from the bite once Thomas had been subdued." *Id*.

Because any factual dispute on this front must be resolved in Mr. Thomas's favor for qualified immunity purposes, the operative facts on appeal are that both Defendant-Appellants had a reasonable opportunity to intervene, as they conceded under oath. *Cole*, 935 F.3d at 452.

## II.   Procedural History

On February 22, 2023, Plaintiff Kerry Lee Thomas filed this civil rights lawsuit against Robert Johnson, Eric M. Bruss, and Wayne Schultz. Defendant-Appellants are three officers (or former officers) of the Harris County Constable's Office, Precinct 1, who, two years prior, subjected Mr. Thomas to an unprovoked police canine attack in violation of his Fourth Amendment rights.

In an August 15, 2023, opinion denying Bruss and Schultz's motion to dismiss, the district court concluded that Johnson had used excessive force, ROA.243, and that qualified immunity did not shield Bruss and Schultz from liability for their failure to intervene. ROA.247, 249. The court held that Mr. Thomas had plausibly alleged Defendant-Appellants were liable because they took no action to stop Johnon's instruction to "a police dog to attack a person suspected of making excessive noise, lying on the ground, with his hands extended before him and without visible access to any weapon." ROA.249. The facts undergirding this Court's opinion came from its own review of bodyworn camera footage capturing the entirety of the incident. ROA.235–36. Discovery only confirmed the court's initial findings. When deposed, Defendant-Appellants did not dispute that they had the opportunity to intervene and had numerous means of doing so. Instead, Defendant-Appellants took issue with the court's conclusion that Johnson's force was excessive in the first place. *See, e.g.*, ROA.2231.

On August 22, 2026, both parties filed cross-motions for summary judgment. On December 2, 2025, the district court denied both parties' motions, finding numerous "genuine disputes of material fact that preclude[d] summary judgment for any party." ROA.5329. The court also denied Defendant-Appellants' second bid for qualified immunity, holding that, "in this case, the relevant principles were clearly established before the alleged misconduct." ROA.5328.

First, the court found it clearly established that "[b]ystander officers are liable when they know their fellow officer is violating an individual's constitutional rights"—this is assessed under a four element test: 1) knowledge that a fellow officer is violating an individual's constitutional rights; 2) presence at the scene of the violation; 3) a reasonable opportunity to prevent the harm; and 4) a choice not to act." ROA.5328–29. Second, and more specifically, the court determined that "[c]learly established law held bystander officers liable for failing to intervene as a police dog was continuously biting the plaintiff even though he was not actively resisting." ROA.5336. Defendant-Appellants filed their Notice of Appeal on December 30, 2025.

## SUMMARY OF THE ARGUMENT

At the time Officer Johnson directed his dog to attack Mr. Thomas, Defendant-Appellants were on notice that the Fourth Amendment forbids canine attacks against prone, compliant individuals who pose no immediate threat. *See*

16

*Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), 844 F.3d 517; *Joseph,* 981 F.3d;

*Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017); and *Deville v. Marcantel*, 567 F.3d

156 (5th Cir. 2009). They were also on notice that police officers have a duty to

intervene in force that is clearly established to be excessive. *See, e.g., Hale v.*

*Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Defendant-Appellants do not dispute that they were within feet of Mr. Thomas

for the minutes leading up to the attack and its duration. In fact, they both testified

under oath that they had the opportunity to intervene but chose not to do so. And so,

in evasion of these facts, Defendant-Appellants attempt to raise the bar. They argue

that even if an officer is: 1) present; 2) aware that clearly established excessive force

is being used; and 3) able to intervene, he need not act unless there is separate

precedent clearly requiring him to intervene against that precise type of force. This

would effectively nullify the duty, permitting bystander officers to turn a blind eye

to wrongdoing in almost every instance.

Qualified Immunity is meant to ensure that officers have fair warning of what

the Constitution requires, not to impose layered hurdles that shield plainly unlawful

conduct. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)[3]. Here, that purpose is already

satisfied. Requiring a second, force-specific body of law addressing bystander

---

[3] Mr. Thomas does not rely on the "obvious case" exception in *Hope*. Rather, he relies on the core
principle that qualified immunity turns on whether officials had "fair warning" that their conduct
was unconstitutional.

liability in identical circumstances, involving identical types of force, would not provide officers with any additional guidance in the moment. It would only create a redundant burden for Plaintiffs and insulate officers who choose not to intervene while a constitutional violation unfolds in front of them. What Defendant-Appellants propose surpasses notice and approaches impunity. The Fourth Amendment is not so weak.

This Court has repeatedly held that officers have a duty to intervene when they witness excessive force and have a reasonable opportunity to prevent it, regardless of the form that force takes. See *Hale*, 45 F.3d at 919; *Carroll v. Ellington*, 800 F.3d 154, 177–78 (5th Cir. 2015); *Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021); *Austin v. City of Pasadena*, 74 F.4th 312, 331 (5th Cir. 2023). Defendant-Appellants cited authority does not compel a different conclusion—each case presents materially different facts where either: 1) the plaintiff proffered no authority on bystander liability, failing to meet their burden; 2) the force at issue was not excessive, making intervention unwarranted; or 3) there was no opportunity to intervene, making intervention impossible. None resemble this case, where: 1) Mr. Thomas identified precedent establishing both the underlying constitutional violation and the duty to intervene; and 2) the district court determined a reasonable jury could find the bystander officers had the opportunity to act against excessive force.

Because clearly established law provided fair notice to Defendant-Appellants that officers may not acquiesce in a canine attack against a prone, unarmed, and compliant individual, the district court correctly denied qualified immunity. The judgment should be affirmed.

## STANDARD OF REVIEW

This Court has jurisdiction to review *de novo* "the determination of what law was 'clearly established' at the time the defendant(s) acted." *Jackson v. Ladner*, 626 F. App'x 80, 84–85 (5th Cir. 2015). In contrast, this Court "lack(s) jurisdiction to review the [trial] court's determination that a genuine fact issue exists." *Id.*; *see Cole*, 935 F.3d at 452 (on interlocutory appeal from the denial of qualified immunity, appellate jurisdiction does not extend to resolving the genuineness or sufficiency of factual disputes and is limited to the legal significance of the facts as assumed by the district court).

## ARGUMENT

I. **The District Court Correctly Held—and Defendant-Appellants Do Not Challenge—that Officer Johnson Used Excessive Canine Force Against Mr. Thomas.**

The district court correctly held that clearly established law forbade Defendant Johnson from directing his dog to attack Mr. Thomas when he was "lying prone and still on the ground throughout the entire encounter, with his hands and

19

legs spread, with no visible access to a weapon, and without making any visible attempt to access any potentially hidden weapon." ROA.5330.

Although Defendant-Appellants say, in passing, that they do not concede any underlying constitutional violation occurred, they make no attempt to challenge the district court's holding on this front, because this effort would fail. Appellants' Brief at 24.

A. *Cooper*, *Timpa*, *Trammell*, and *Deville* clearly established that the force used against Mr. Thomas was excessive.

The law is clear, and, as the district court held, it was clear at the time Mr. Thomas was attacked: "The Fifth Circuit has 'consistently held that a suspect does not pose an immediate threat where he unambiguously surrenders by, for example, placing his hands in the air and complying with the officers' commands.'" ROA.5329-30 (citing *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018)). The court held the same in the context of canine force, noting that "the underlying principle in *Cooper*—that a prolonged dog bite after a suspect submitted and posed no threat is excessive—clearly established [a constitutional violation] for each officer at the scene. . ." ROA. 5336.

Accordingly, the court correctly applied the *Graham v. Connor*, 490 U.S. 386, 396 (1989) factors, noting:

> Thomas was not suspected of committing a serious crime, but only of making noise in front of a house. The complainant's call to dispatch reported that two men were screaming and yelling in front of his home;

20

it was the complainant who had the firearm. When Johnson released his dog, Thomas posed no threat to any officer. He was prone, with his arms outstretched, trying to comply with officers' shouted commands, with no sign of access to a firearm.

ROA.5329.

As for Defendant-Appellant's dissatisfaction with Mr. Thomas's pace, the court noted that, "Thomas was silent and prone for the two minutes before he was attacked." ROA.5333. Although he "did not immediately comply with the officers' request to stand in the twenty seconds before Johnson released his dog to attack Thomas. . .such passive resistance does not justify the use of canine force." *Id.* (citing *Joseph*, 981 F.3d at 333–42; *Cooper*, 844 F.3d at 523; and *Trammell*, 868 F.3d at 341.

The court also engaged with and rejected Defendant-Appellant's claim that their "reasonable belief" Mr. Thomas had a gun justified canine force:

> Even if a gun had been visible and within Thomas's access, "merely having a gun in one's hand does not *per se* equate to dangerousness or a threat." And Thomas did not even have a gun in his hand; he was prone "in a surrender position" and "stood stationary in the officers' line of sight."

ROA.5333–34 (citing *Rainwater v. Sikes*, No. 4:17-CV-967-A, 2018 WL 1916566, at *4 (N.D. Tex. Apr. 23, 2018); *Graves v. Zachary*, 277 F. App'x 344, 348 (5th Cir.

21

2008); *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996); *Cole*, 935 F.3d at 455; *Amador v. Vasquez*, 961 F.3d 721, 729 (5th Cir. 2020)).[4]

The district court's holdings here should come as no surprise. Long before Defendant-Appellants' attack on Mr. Thomas, this Court deemed it "clearly established" that "subjecting a compliant and non-threatening arrestee to a lengthy dog attack [is] objectively unreasonable" under the Fourth Amendment. *Cooper*, 844 F.3d at 525. In *Cooper*, police pulled over Jacob Cooper on suspicion of a DUI. *Id.* at 521. After submitting to a breathalyzer, Mr. Cooper ran away and hid in a small, fenced area between two houses. *Id.* The officer who pulled over Mr. Cooper called for backup. *Id.* Responding to this call, Officer Brown pursued Mr. Cooper with his police dog. *Id.* The officers did not know whether Mr. Cooper was armed. *Id.* The dog found Mr. Cooper in his hiding place and bit him on the leg. *Id.* Following the initial bite, the dog continued biting Mr. Cooper for another one to two minutes, during which Mr. Cooper made no attempt to flee or fight back. *Id.* Brown testified that he ordered Mr. Cooper to show his hands and submit to arrest, that he could see Mr. Cooper's hands, and that he could see Mr. Cooper had no weapon. *Id.* Only after handcuffing him did the officer order the dog to release its bite. *Id.*

---

[4] Ultimately, the district court found that there was a genuine factual dispute as to "whether it was reasonable for the officers to believe that Thomas had a firearm." ROA.5334. To the extent the reasonableness of Officer Johnson's force turns on whether the officers reasonably believed that Mr. Thomas had a firearm, this Court must view the facts in the light most favorable to Mr. Thomas for purposes of this appeal, and decide the issue accepting that Defendant-Appellants did *not* have a reasonable basis to believe that Mr. Thomas had a firearm.

On these facts, this Court affirmed denial of summary judgment for the officer, holding that the officer's use of force was unreasonable and excessive and that this was clearly established at the time of the incident: "Our caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id.* at 524. Further, this Court pointed to its prior holding in *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)—notably, involving a different kind of force—that "it was objectively unreasonable for an officer to slam an arrestee's face into a nearby vehicle when the arrestee 'was not resisting or attempting to flee.'" *Id.* at 524–25.

In this case, Defendant-Appellants' violation of clearly established law is even starker than in *Cooper*, 844 F.3d. In *Cooper*, the plaintiff was suspected of a "DUI, [which] is a serious offense." *Id.* at 522. Here, Mr. Thomas was suspected merely of "making noise." ROA.5329. In *Cooper*, the plaintiff originally fled and hid from police. 844 F.3d at 521. Here, Mr. Thomas did neither. ROA.1912. Like the plaintiff in *Cooper*, Mr. Thomas never gave any indication that he was in any way violent or posed any threat to the safety of the officers or others. ROA.1923, 1925. And, as in *Cooper*, Mr. Thomas was not resisting or attempting to flee when Defendant-Appellants allowed a dog to attack him. *Id*. Thus, as the district court recognized, *Cooper* is on all fours with this case, and it put Defendant-Appellants' on notice that

23

the Fourth Amendment did not permit a canine attack against Mr. Thomas. ROA.243, 245.

This Court's holdings in *Timpa*, *Trammell*, and *Deville* only reinforce the principle. *See Timpa*, 20 F.4th at 1034 (holding that "[w]ithin the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable. . . ." (cleaned up)); *Trammell*, 868 F.3d at 341 (holding that "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified."); *Deville*, 567 F.3d at 167-69 (finding no justification for use of force where an individual posed no threat, did not attempt to flee, and at most engaged in passive resistance).

Defendant-Appellants attempt to distinguish this case law based on the nature of the force involved, but this runs afoul of the clear line drawn in *Timpa*, where the court analyzed bystander claims, held that using force on a subdued person is objectively unreasonable, and declared that "this principle applies with obvious clarity to a variety of tools of force because the lawfulness of force. . .does not depend on the precise instrument used to apply it." 20 F.4th at 1035 (quotations omitted).

    B. <u>Defendant-Appellants have forfeited any claim that the force used against Mr. Thomas was not excessive.</u>

By failing to challenge the district court's excessive force finding, Defendant-Appellants have forfeited any argument against it. *Rollins v. Home Depot USA*, 8

24

F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it.");

*Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that a party forfeits an argument by failing to adequately brief it). Regardless, as discussed, *supra* Section I.A., Mr. Thomas's right to be free from excessive canine force was clearly established at the time of the attack.

For these reasons, the district court's excessive force finding cannot and should not be disturbed.

## II. Defendant-Appellants Had the Opportunity to Intervene, Yet Failed to Do So.

The district court found genuine disputes of material fact as to whether Schultz and Bruss had a reasonable opportunity to intervene. ROA.5340–42. On interlocutory appeal, this Court's role is limited: it "lack[s] jurisdiction to resolve the genuineness of any factual disputes" and may not second-guess the district court's determination that a reasonable opportunity to intervene may have existed. *Cole*, 935 F.3d at 452. Accordingly, for purposes of qualified immunity analysis, this Court must conclude that Defendant-Appellants did, in fact, have the opportunity to intervene. *See id*. The copious video evidence in this case only supports this conclusion.

The record reflects that Defendant-Appellant Schultz stood mere feet behind Johnson throughout the encounter, including during the canine deployment and prolonged bite. ROA.5342. That conclusion is supported by Schultz's own

25

admissions. He testified that he could have objected and asked Johnson to remove the dog from the bite. ROA.5341–42. Video evidence corroborates that testimony, showing that Schultz "saw what [Johnson] saw" and remained in position for approximately 45 seconds while the dog bit Mr. Thomas and for an additional period while Johnson restrained him as the dog continued to pull at his arm. ROA.5342.

As a seasoned officer with decades of law enforcement experience, Schultz was not a passive observer unfamiliar with use-of-force principles. ROA.1924. He understood the range of force options available and admitted that Johnson "might have waited a little bit longer" before releasing the dog. ROA.1926. Yet he made no effort to delay the deployment, suggest alternatives, or stop the ongoing use of force once it began. *Id.*

Similarly, the record shows that Defendant-Appellant Bruss observed Johnson subdue Mr. Thomas and then watched as the dog continued to bite him for nearly 45 seconds before it was removed. ROA.5341. Bruss admitted that he had a reasonable opportunity to intervene. In his deposition, he acknowledged that he could have told Johnson not to release the dog and that he could have instructed Johnson to remove the dog from the bite once Mr. Thomas was subdued. ROA.5341, 1922-23. Those are not disputed inferences; they are direct admissions.

And yet, Bruss did nothing to stop the attack. Instead, he allowed the dog to remain on Mr. Thomas until after he was handcuffed. ROA.5341. He immediately

followed that instruction with a taunt, telling Mr. Thomas that he "ain't seen nothing yet." *Id.*

As this Court has explained, when "officers argue that there was no time or opportunity for them to intervene and that they could not perceive what [other officers] were doing[, those] arguments fall into the category of factual disputes that a jury must decide." *Joseph*, 981 F.3d at 344. This Court lacks jurisdiction to credit Defendant-Appellants' claims and must instead evaluate qualified immunity accepting the well-supported premise that they had a reasonable opportunity to intervene.

### III.    At the Time Mr. Thomas Was Attacked, It Was Clearly Established that Defendant-Appellants Schultz and Bruss Had a Duty to Intervene.

The duty to intervene against excessive force has been clearly established in this circuit since 1995. *Hale*, 45 F.3d at 919. Despite this Court's consistent use of authority involving a variety of types of force to establish the duty to intervene— specifically, *Hale*, *Carroll*, *Hamilton v. Kindred*,[5] *Timpa*, and *Austin*—Defendant-Appellants argue that without bystander authority specific to *canine* force, Mr. Thomas's claims must fail. This approach is untethered from the law as well as the underlying, notice-rooted purpose of qualified immunity.

---

[5] 845 F.3d 659 (5th Cir. 2017).

This Court's precedent and Precinct 1's own policies make clear that the duty to intervene is clearly established and applies regardless of the type of force used. Defendant-Appellants' cited authority is not the contrary–each case involves materially different facts where: 1) the plaintiff did not identify clearly established law, 2) the force at issue was not excessive, or 3) the officer lacked any opportunity to intervene. Accordingly, this Court should not disturb its well-developed precedent on bystander liability in excessive force cases. It was clearly established that Defendant-Appellants had a duty to intervene in Officer Johnson's excessive use of force against Mr. Thomas, and qualified immunity offers no shield.

A. <u>Defendant-Appellants were on notice of their duty to intervene in excessive force, regardless of the type of force used.</u>

To overcome qualified immunity, a plaintiff must "identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . .was held to have violated the Constitution." *Joseph*, 981 F.3d at 330 (quotations omitted). But the Supreme Court has made clear that this does not require a case "directly on point," nor one involving "the very action in question." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope*, 536 U.S. at 741 (noting that "officials can still be on notice that their conduct violates [clearly] established law even in novel factual circumstances" and prior cases need not have "fundamentally similar" or even "materially similar" facts). Instead, the relevant

28

inquiry is whether existing precedent gave officers fair notice that their conduct was unlawful. *Joseph*, 981 F.3d at 343; *see also Austin*, 74 F.4th at 331(confirming that "clearly established law . . . provides fair notice to officers of their duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others" (citing *Hale*, 45 F.3d at 919)).

For decades, this Court has recognized—across a wide array of factual circumstances and types of force—that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Carroll*, 800 F.3d at 177 (quoting *Hale*, 45 F.3d at, 919). Indeed, the duty to intervene has been clearly established since 1995 when this Court held in *Hale v. Townley* that bystander officers were liable for standing nearby and laughing while another officer slammed a suspect into a car and assaulted him. 45 F.3d at 919. *Hale* established that officers who are present and fail to take reasonable measures to protect a suspect from excessive force may be held liable—particularly where their conduct reflects encouragement of the violation rather than mere inaction. *Id*. This duty arises where an officer is present, observes a constitutional violation, and has a reasonable opportunity to prevent it.

*Id.*; *see also Hamilton*, 845 F.3d at 663; *Timpa*, 20 F.4th at 1039; *Austin*, 74 F.4th at 331; *Ambler v. Nissen*, 116 F.4th 351, 364 (5th Cir. 2024).[6]

Defendant-Appellants' own precinct policy explicitly reaffirms this standard. ROA.1932–33, 3480. While internal policies do not themselves create constitutional rights, they can "bolster a finding that defendants had 'fair and clear warning' of the clearly established right at issue." *Banks v. Herbrich*, 90 F.4th 407, 416 (5th Cir. 2024); *see also Groh v. Ramirez*, 540 U.S. 551, 564 (2004).

Precinct 1 policy requires "[a]ny officer present and observing another officer, regardless of rank," to intervene to prevent excessive force, and makes clear that this duty applies to "any use of force in violation of [Precinct 1] policy." ROA.3480. Sergeant Stuart Red—who testified both as Precinct 1's 30(b)(6) witness and one of Defendant-Appellants' experts—made explicit that the duty applied "no matter what type of force is being used." ROA.3556. Precinct 1 policy also prohibits the use of canine force against a suspect who is compliant or only passively resisting and limits such force to situations involving an immediate threat, active resistance, or flight. *See* ROA.3006, 3037–38 (Precinct 1 supervisor explaining that passive resistance does not warrant the use of a canine); ROA.3535 (same).

---

[6] Defendant-Appellants seem to question "in a footnote . . . whether [this Court's] precedents, as opposed to the Supreme Court's, can clearly establish the law for purposes of qualified immunity. A proverbial mountain of binding authority is to the contrary." *Boyd v. McNamara*, 74 F.4th 662, 669–70 (5th Cir. 2023) (collecting cases); *see also* Appellants' Brief at 240 n.8.

Accordingly, both precinct policy and this Court's precedent made clear that the duty to intervene applies regardless of the excessive force used, and that the force used in this case was excessive, requiring intervention.

B. *Hale*, *Timpa*, and *Austin* put Defendant-Appellants' on notice of their duty to intervene under these specific circumstances.

Beyond articulating broad principles, this Court's well-developed body of bystander liability case law put Defendant-Appellants on notice that they were required to intervene under the *specific circumstances* of this case. Defendant-Appellants Bruss and Schultz observed Mr. Thomas for minutes leading up to the use of force, and saw that he was compliant, unarmed, and prone on the ground. ROA.5330. Applying this Court's holdings in *Hale*, 45 F.3d 914, *Timpa*, 20 F.4th 1020, and *Austin*, 74 F.4th 312, it is clear that Defendant-Appellants had an obligation to intervene.

As in *Hale*—where bystander officers laughed as another officer slammed the plaintiff into a car—the record here contains evidence of encouragement, not just inaction. After the dog bit violently into Mr. Thomas, Bruss told him, "you ain't seen nothing yet." ROA.5341. And like the bystander officers in *Hale*, Bruss had so little regard for Mr. Thomas' pain that he even laughed and cracked jokes after the fact. ROA.1922, 1956 at 19:52:50. Therefore, *Hale* put Defendant-Appellants on notice that officers violate clearly established law when they stand by, encourage, or mock

31

the victim of a fellow officer's use of excessive force, rather than taking reasonable steps to stop it.

As in *Timpa*—where officers watched as another officer kneeled on a prone person as he lost consciousness—the force here was prolonged, not instantaneous. Schultz and Bruss allowed the dog to bite Mr. Thomas for roughly 45 seconds while Mr. Thomas remained prone, unarmed, and compliant. ROA.5340, 5342. Defendant-Appellants Schultz and Bruss observed this sequence and did not intervene. *Id*. *Timpa* put Defendant-Appellants on notice that officers who observe a prolonged use of force during a critical window—and have time to object or otherwise intervene—violate clearly established law if they fail to act.

As in *Austin*—where bystander officers watched without objecting as another officer tased a man—nothing prevented Defendant-Appellants from objecting to the excessive force. Both officers admitted that they could have told Johnson to remove the dog, "not to release the dog" or "urged a swifter effort to get the dog to release its bite." ROA.5344. *Austin* put Defendant-Appellants on notice that officers have an affirmative duty to object to and prevent unconstitutional force when they are present and able to intervene.

Accordingly, the district court correctly held:

> On these facts, a jury could find (or not find) that Bruss not just failed to object to, but participated in, *Austin*, 74 F.4th at 331, encouraged, or even jeered at a clear constitutional violation, *Hale*, 45 F.3d at 919,

32

despite an admission that he had a reasonable opportunity to prevent the violation, *Timpa*, 20 F.4th at 1039.

ROA.5341; *see also* ROA.5342 (applying similar reasoning to Defendant-Appellant Schultz).

In sum, the weight of this Court's precedent made clear to Defendant-Appellants that they were obligated to intervene to help and protect Mr. Thomas.

C. This Court has never required plaintiffs to proffer force-specific case law to establish a duty to intervene.

This Court's analysis and application of bystander liability over many decades reveals that Defendant-Appellants' force-specific articulation of the standard is wrong. In *Hamilton v. Kindred*, this Court denied qualified immunity where an officer failed to intervene during an invasive body cavity search conducted during a traffic stop. 845 F.3d. at 663. Despite differences in the factual circumstances and type of force used, this Court determined that *Hale* clearly established the duty to intervene. *Id*.

Similarly, in *Carroll v. Ellington*, the Court addressed a bystander officer's failure to intervene while other officers struck a suspect who had already been handcuffed and subdued. 800 F.3d at 177. For clearly established law, the Court relied on *Hale* and *Kitchen v. Dallas Cnty.,* 759 F.3d 468, 480 (5th Cir. 2014), even though neither case involved force against an already-handcuffed suspect during an arrest. *Id*. *Kitchen* concerned officers' failure to intervene during a custodial use of force, where detention officers kicked, choked, and stomped a restrained detainee

33

during a jail cell extraction. 759 F.3d at 479–80. And *Hale*, as discussed, did not involve a suspect that was already subdued. Despite numerous factual differences, this Court had no difficulty concluding that these cases provided fair notice of the duty to intervene in *Carroll*. This Court's analysis turned on the clear principle the cases established, not the precise mechanism of force. *Carroll*, 800 F.3d at 177.

The same logic guided this Court's approach in *Timpa v. Dillard*. In *Timpa*, officers knelt on a prone man's back for an extended period while he became unresponsive. 20 F.4th at 1026, 1039. The bystander officers remained present during the critical period when the danger was obvious and had time to intervene, yet did nothing. *Id*. This Court denied qualified immunity to the bystanders, emphasizing that officers violate clearly established law when they observe a prolonged use of force and fail to act despite having the opportunity to stop it. *Id*. The underlying force—prolonged prone restraint—was materially different from the slamming conduct in *Hale*, yet the Court again treated *Hale* as sufficient to clearly establish the duty to intervene. *Id*. Notably, this Court's analysis focused on the officer's awareness of the clearly established constitutional violation and his opportunity to intervene during a prolonged use of force. *Id*.

More recently, in *Ambler v. Nissen*, this Court applied the same principle in the context of force following a high-speed chase, including tasing and physical restraint. 116 F.4th at 364. The Court denied qualified immunity to a bystander

34

officer, holding that he had "fair notice" that participating in or failing to prevent excessive force could give rise to liability. *Id.* (citing *Hamilton*, *Carroll*, and *Timpa*). None of those cases involved using a taser[7] on a subdued subject following a high-speed chase, yet the Court found them sufficient to provide notice of the duty to intervene. This directly undercuts Defendant-Appellants' argument that a force-specific case is required to clearly establish the duty to intervene.

*Austin v. City of Pasadena* again follows the same framework. In *Austin*, officers restrained and tased a detainee during an epileptic seizure while other officers stood by or participated. 74 F.4th at 331. This Court held that clearly established law allowed a jury to find that officers who tased and restrained a seizing detainee "acquiesced in the constitutional violations, both by not objecting and by participating in similar conduct." *Id.* at 331. Just like in *Ambler*, this Court held that the duty to intervene in the excessive use of a taser was clearly established by cases not involving the use of a taser—specifically *Hale* and *Timpa*—and concluded that those precedents provided "fair notice" of the duty "to intervene, rather than to acquiesce, in the unconstitutional conduct of others." *Id.*

---

[7] While it is true that in *Carroll*, Mr. Carroll was tased, this Court did *not* hold that the use of the taser was an unreasonable use of force. Instead, this Court held that repeatedly *striking* Mr. Carroll after he had been tased and handcuffed was unreasonable, and that the bystander officers were liable for failing to intervene. 116 F.4th at 176–77.

In short, this Court has consistently looked to whether existing precedent would have made clear to a reasonable officer that failing to act in the face of excessive force was unlawful. Differences in the precise form of force have not controlled. There is no basis to treat canine force differently here. As in other cases where this Court found a clearly established duty to intervene, Mr. Thomas was prone, unarmed, and compliant; the use of force was prolonged; and Defendant-Appellants were present, aware of the circumstances, and able to intervene. Under this Court's precedent, Defendant-Appellants were required to act and can be held liable for their failure to do so.

Decisions from other circuits only reinforce this conclusion. In *Priester v. City of Riviera Beach*, the Eleventh Circuit denied qualified immunity where officers failed to intervene in a dog attack on a compliant suspect, relying on duty-to-intervene case law in a variety of contexts rather than canine-specific precedent. 208 F.3d 919, 927–28 (11th Cir. 2000). And in *Baxter v. Harris*, the Sixth Circuit likewise concluded that clearly established law required officers to intervene to stop a canine attack on a non-resisting suspect, even though the duty-to-intervene precedent on which it relied did not involve police dogs. No. 15-6412, 2016 WL 11517046, at *2 (6th Cir. Aug. 30, 2016). These conclusions are logical: if officers are put on notice of their duty to intervene in less serious forms of excessive force—

36

such as physical assaults, cavity searches, and taser firings—they are undoubtedly on notice of their duty to intervene in the more serious use of excessive canine force.

D. <u>Mr. Thomas does not and need not rely on *Cooper* to establish all three elements of bystander liability.</u>

Defendant-Appellants' claim that, "*Cooper* [] cannot supply the clearly established law that Thomas needs to overcome qualified immunity" because, "in *Sligh* [*v. City of Conroe*, 87 F.4th 290 (5th Cir. 2023)], this Court expressly rejected reliance on *Cooper* as clearly establishing a constitutional duty for bystander officers to intervene in a canine apprehension." Appellants' Brief at 26. Defendant-Appellants are half-right. *Cooper*, alone, does not clearly establish a duty to intervene in this case, because it only speaks to *some* of the four elements of bystander liability: what constitutes excessive canine force. *Cooper*, 844 F.3d. In that regard, whether an officer is directing a canine to bite someone or merely *watching* the violence unfold, *Cooper* provides the same notice—it is unreasonable to direct a police canine to attack someone who is not resisting, fleeing, or posing any threat. *Id.* at 525 (holding that "subjecting a compliant and non-threatening arrestee to a lengthy dog attack [is] objectively unreasonable" under the Fourth Amendment.).

The district court held the same:

> *Sligh* does not foreclose a plaintiff's reliance on *Cooper* to establish the first two elements [of a duty to intervene claim]: that the bystander officers knew that the officer handling the police dog violated the

37

plaintiff's constitutional rights because the bystanders were at the scene when the constitutional violation occurred.

ROA.5337.

Moreover, the Defendants in *Sligh* had much less opportunity to intervene than the Defendant-Appellants had. It bears emphasis that, in *Sligh*, video evidence captured the plaintiff physically resisting arrest and breaking the officers' grip before a canine handler released his dog without warning. 87 F.4th at 296–97. Within eight seconds, the officers then ordered the dog to release the bite. *Id.* Because the Defendants in *Sligh* confronted physical resistance and did not unnecessarily prolong the bite, the Court held that *Cooper* was distinguishable and did not clearly establish a constitutional violation in Sligh's circumstances. *Id.* at 301.

Here, as the district court recognized, *Cooper* is on all fours with the facts of this case, so this Court's reasoning in *Sligh* does not apply. Appellants' Brief at 22-25. *Cooper* does supply clearly established law as to the excessive force element of bystander liability, alongside the other precedent Mr. Thomas has proffered.

## IV. Defendant-Appellants' Cited Authority Does Not Alleviate Them of Their Duty to Intervene.

Defendant-Appellants' claim to have "on-point cases demonstrating the absence of" a duty to intervene in "active canine-assisted apprehensions." Appellants' Brief at 17. In reality, none of these opinions excuse their failure to act— they present materially different facts where: 1) the plaintiff did not identify clearly

established law, 2) the force at issue was not excessive, or 3) the officer lacked any opportunity to intervene. In contrast, Mr. Thomas has proffered authority clearly establishing both the underlying constitutional violation and the duty to intervene. Moreover, the district court found the use of force excessive *and* found evidence permitting a reasonable jury to conclude that Defendant-Appellants had an opportunity to intervene. Because Defendant-Appellants rely on authority that does not help their position, their second bid for qualified immunity must fail.

A.  Unlike Mr. Thomas, the Plaintiffs in *Sligh*, *Joseph*, and *Norman* failed to proffer any authority on bystander liability.

Defendant-Appellants claim *Sligh* requires a Plaintiff to identify case law specifically establishing a duty to intervene "during [] canine-assisted apprehension[s]." Appellants' Brief at 18. As the district court noted, this is a "maximalist" mischaracterization of *Sligh* that ignores the facts. ROA.5337. In reality, this Court determined Sligh had failed to establish a duty to intervene because she cited no precedent *other* than *Cooper* in support of her claim against a bystander officer. *Id.* The district court below agreed, holding:

> *Sligh*'s legal ruling on the scope of bystander liability in dog-bite cases was limited by the plaintiff's failure to adequately argue the issue. The plaintiff in *Sligh* pointed only to *Cooper*, not to any other case addressing when a bystander officer has an opportunity to intervene. *See* 87 F.4th at 301 ("Sligh points to no other case clearly establishing the law on this issue.").

ROA.5343.

The same problem drove this Court's grant of qualified immunity to bystander officers in *Joseph*, where: "Plaintiffs [did] not identify a single case to support the argument that any reasonable officer would have known to intervene under these circumstances." 981 F.3d at 345. In fact, this Court remarked: "We make no comment on whether Plaintiffs could have done so—the record in this case simply shows that they have not done so. In fact, they do not make *any* arguments as to the clearly established law." *Id.* (emphasis added).

Similarly, in *Norman v. Ingle*, the plaintiff "point[ed] to no case [clearly establishing the] failure to intervene specifically." 151 F.4th 707, 714 (5th Cir. 2025). Mr. Thomas's briefing does not suffer from these deficiencies. *See supra* Section III. More importantly, in *Norman*, the force at issue was deemed reasonable and the bystander officer had "only five or six seconds to intervene," during which he "both encouraged the use of force and its end." *Norman,* 151 F.4th at 713. Accordingly, this Court held "that no reasonable jury could find that [the Defendant] violated [Plaintiff's] constitutional rights—clearly established or not." *Id*. at 712. In other words, even if the plaintiff *had* cited cases clearly establishing the duty to intervene, that duty would not have existed in *Norman* because the force witnessed was not excessive, and therefore did not warrant intervention. *Id*. at 712–13. And the fact that the bystander officer nevertheless "encouraged" the end of the use of force in the limited six seconds available dramatically distinguishes *Norman* from this

case, where Defendant-Appellants watched the canine bite Mr. Thomas for 45 seconds without intervening. *Id*. at 713. Here, the operative facts on appeal are that Defendant-Appellants had an opportunity to intervene in excessive force, putting *Norman* in another lane.

    B. <u>Unlike Mr. Thomas, the Plaintiffs in *White* and *Walton* failed to establish that bystanders had an opportunity to intervene or that the force witnessed was excessive.</u>

Defendant-Appellants next rely on two inapposite district court cases, *Walton* and *White,* for the premise that there is "no clearly established duty to intervene" in the context of canine-assisted apprehensions." Appellants' Brief at 30–31 (citing *White v. Calvert*, No. CV H-20-4029, 2021 WL 6112791 (S.D. Tex. Dec. 27, 2021) and *Walton v. Tunica Cnty., Miss*., 648 F. Supp. 3d 780 (N.D. Miss. 2023)). In reality, the district courts in both cases evaluated scenarios that are factually distinct from this case and ultimately found that the officer lacked an opportunity to intervene (a factual matter that cannot be litigated in this appeal). *Joseph*, 981 F.3d at 344; *Cole*, 935 F.3d at 452.

In *Walton*, the court evaluated a canine attack that was only partially captured on camera and was, according to the defendant officers, an accident not ordered or intended by any officer on scene. 648 F. Supp. 3d 780 at 784. Importantly, the bystander officer in *Walton* "was at his patrol unit speaking on the phone with Plaintiff's aunt when the incident occurred," and the plaintiff did not contest this

fact. *Id.* at 795. Accordingly, the court found that the plaintiff had failed to rebut the bystander's assertion that he was "too far away to stop the attack." *Id.* at 796. In other words, Walton's case failed before even reaching the qualified immunity prong concerning the *duty* to intervene because the Defendant had no *opportunity* to intervene.

The same is true of *White*, where the plaintiff fled from police for over two hours, coming in and out of sight, discarding drugs, and repeatedly reaching into his waistband. 2021 WL 6112791 at *1–2. It was only when the plaintiff hid in an unlit shed, failed to show his hands, and appeared to be reaching for his waistband that the bystander officer called for canine assistance. *Id.* The evidence in *White* established that the dog in question had never bitten anyone before and that the bystander officer did not specifically request a dog bite or otherwise know a dog bite would ensue. *Id.* Under these specific circumstances, the *White* court determined that an officer in the bystander's position could not have reasonably known "that when [he] requested the dog's assistance, the dog would bite [the plaintiff] for a prolonged and excessive period." *Id.* at *15. And because the Officer who released the canine— and was the only one who could command the canine to release the bite—was not in the shed and could not see the plaintiff, the district court found that the bystander officer "did not have a reasonable *opportunity* to intervene." *Id*. (emphasis added). Importantly, the court also determined that the force used was *not* excessive because

42

both the canine officer and bystander could have reasonably believed the plaintiff was still armed and "would not surrender without further resistance, given [his] extreme measures to avoid arrest during the two-hour chase." *Id.* at *14. It is accordingly obvious that the officer in *White* had no duty to intervene in the use of reasonable force; the duty to intervene only applies when there is an *opportunity* to intervene and the use of force is *unreasonable*.

In sum, it is unsurprising that the Plaintiffs in these cases failed to identify law clearly requiring intervention under the circumstances—how could an officer have a duty to intervene if they had no opportunity? Unlike the cases Defendant-Appellants cite, they had an opportunity—and accordingly a duty—to intervene.

C. <u>Unlike Defendant-Appellants, the bystander officers in *Whitley* were not present when force was used and, nevertheless, still took steps to intervene.</u>

Finally, Defendant-Appellants rely on *Whitley v. Hanna,*, where this Court— in dicta left to a footnote—stated that "[e]ven if bystander liability did apply, [it] nevertheless would be compelled to affirm the district court's judgment . . . on the second prong of the qualified immunity analysis because [the plaintiff] failed to identify clearly established law requiring an officer immediately to intervene while engaged in covert surveillance of a perpetrator." 726 F.3d 631, 647 n.13 (5th Cir. 2013; *see also* Appellants' Brief at 22–23.

43

*Whitley* involved an officer who was sexually abusing a child and other officers who, upon learning of the abuse, began an investigation to stop and prosecute him. The child sued the officers who investigated the abusing officer for failing to intervene.

Because Whitley did not allege that the bystander officers were present for the abuse, and because the defendants as a group were "far from being [] bystander[s]," considering they were actively "accumulating evidence for [the abusing officer's] prosecution," this Court concluded they "acted reasonably in attempting to stop [the abusing officer] from further abusing Whitley and other minors by endorsing a plan that would lead to the[ir] arrest." *Whitley*, 726 F.3d at 647–648. In sum, Whitley's claims failed not because she failed to point to sex-abuse specific law establishing the duty to intervene, but because Defendants weren't bystanders in the first place. *Id.* They could not stop what they did not witness, and once they knew of the harm, they intervened. As Mr. Thomas has now unpacked at length, those are not the facts here. *Supra* Section I.D.

Defendant-Appellant's cited authority does not undercut decades of this Court's precedent establishing the duty to intervene in force against excessive force, both as a broad principle and in the circumstances of this case.

★   ★   ★

In sum, this Court's precedent and Defendant-Appellants' own policies provided more than sufficient notice that standing by while a police dog inflicted prolonged force on a prone, compliant individual was unlawful. Defendant-Appellants know this. And so, they attempt to raise the bar for bystander liability by arguing that no clearly established law required intervention in the specific context of canine force. This is not the standard, and is contrary to this Court's precedent. Qualified immunity turns on notice, and the same case law that made Johnson's conduct unconstitutional—combined with authority establishing a duty to intervene—put Defendant-Appellants on notice that they could not stand by while that force was inflicted.

## V.    Qualified Immunity Does Not Apply to Claims Brought Pursuant to 42 U.S.C. § 1983

Qualified immunity does not apply to Mr. Thomas's section 1983 claims: recent scholarship has revealed that section 1983 as originally enacted contained a "Notwithstanding Clause" that explicitly displaced common-law defenses, including qualified immunity. *Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (Willett, J., concurring) (citing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023)). However, the "Reviser of Federal Statutes made an unauthorized alteration to [that] language" which "has never been corrected," rendering the foundation of the doctrine flawed. *Id.* at 980. Because this Court has held that only the Supreme Court can grapple with this argument, Mr. Thomas raises

this argument to preserve it. *See id*. at 979; *see also Hankins v. Wheeler*, 109 F.4th 839, 845 (5th Cir. 2024).

## CONCLUSION

For the reasons stated above, Plaintiff-Appellee asks this Court to affirm the district court's denial of qualified immunity to Defendant-Appellants and remand the case for further proceedings on Plaintiff's § 1983 claims arising from Defendant-Appellants' failure to intervene in the use of excessive force.

Submitted by:

/s/Alessandro Clark-Ansani

BRITTANY FRANCIS
brittany@peoplescounsel.org
PEOPLES' COUNSEL
1900 W. Gray Street, P.O Box 130442
Houston, Texas 77219
Telephone: (713) 487-9809

ALESSANDRO CLARK-ANSANI
alessandro@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Avenue, N.W. Suite 800
Washington, DC 20009
Telephone: (202) 844-4975
Counsel for Plaintiff-Appellant

# CERTIFICATE OF SERVICE

I certify that on April 22, 2026, the foregoing document was served via the

Court's electronic filing system to the following parties/counsel:


Stephanie A. Hamm
Alexa Gould
Celena Vinson
THOMPSON & HORTON LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

/s/Alessandro Clark-Ansani

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.1: this document contains 10,403 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman, font-size 14.

s/Alessandro Clark-Ansani