Case No. 25-20590

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

KERRY LEE THOMAS

Plaintiff – Appellee

v.

ERIC M. BRUSS; WAYNE SCHULTZ,

Defendants - Appellants

---

On Appeal from the United States District Court for the Southern District of Texas
Civil Action No. 4:23-cv-662

---

## APPELLANTS' REPLY BRIEF

---

Stephanie A. Hamm
Alexa Gould
THOMPSON & HORTON LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

ATTORNEYS FOR APPELLANTS

i

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................iii

Introduction ....................................................................................................................... 1

Argument and Authorities ................................................................................................ 2

    A.    Clearly established law must be defined with a "high degree of specificity" in excessive force cases ............................................................. 2

    B.    The Fifth Circuit requires plaintiffs alleging bystander liability to identify clearly established authority requiring intervention in the specific context presented .............................................................................. 4

    C.    Thomas failed to identify clearly established law requiring Bruss and Schultz to intervene in a canine-assisted apprehension ...................... 7

        1.    *Hale*, *Timpa*, and *Austin* do not clearly establish a duty to intervene in a canine-assisted apprehension ..................................... 7

        2.    Thomas's cited authority does not alleviate his duty to demonstrate that Bruss and Schultz had a clearly established duty to intervene in a canine-assisted apprehension........................ 9

        3.    The Fifth Circuit has never held that bystander officers have a duty to intervene in a canine-assisted apprehension.................... 11

    D.    Controlling precedent dictates that qualified immunity applies to claims brought under 42 U.S.C. § 1983 ....................................................... 13

Conclusion and Prayer..................................................................................................... 14

Certificate of Service........................................................................................................ 15

Certificate of Compliance ............................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Ambler v. Nissen*,
116 F.4th 351 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2683 (2025)........................10

*Amnesty America v. West Hartford*,
361 F.3d 113 (2004)........................................................................................................3

*Anderson v. Creighton*,
483 U.S. 635 (1987) ........................................................................................................4

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ........................................................................................................4

*Austin v. City of Pasadena*,
74 F.4th 312 (5th Cir. 2023) ...........................................................................7, 8, 9, 10

*Carroll v. Ellington*,
800 F.3d 154 (5th Cir. 2015) ...................................................................................9, 10

*Green v. Thomas*,
129 F.4th 877 (5th Cir. 2025)......................................................................................13

*Hale v. Townley*,
45 F.3d 914 (5th Cir. 1995) .................................................................................. 7, 8, 9

*Hamilton v. Kindred*,
845 F.3d 659 (5th Cir. 2017) .................................................................................. 9, 10

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ......................................................................................................13

*Helm v. Rainbow City, Ala.*,
989 F.3d 1265 (11th Cir. 2021)....................................................................................11

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........................................................................................................4

*Howard v. City of Houston, Tex.*,
2022 WL 479940 (S.D. Tex. Feb. 16, 2022) ................................................................5

*Jacobs v. Nat'l Drug Intelligence Ctr.*,
548 F.3d 375 (5th Cir. 2008) ........................................................................................11

*Joseph on behalf of Estate of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020) ......................................................4, 5, 10, 11

*Kisela v. Hughes,*
    584 U.S. 100 (2018) .......................................................................................3

*Martinez v. Tex. Dep't of Crim. Justice,*
    2024 WL 5111975 (S.D. Tex. Nov. 12, 2024) .......................................5, 6

*Mason v. Faul,*
    929 F.3d 762 (5th Cir. 2019) ......................................................................2

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011) ....................................................................11

*Morrow v. Meachum,*
    917 F.3d 870 (5th Cir. 2019) ......................................................................3

*Norman v. Ingle,*
    151 F.4th 707 (5th Cir. 2025).......................................................................5

*Sligh v. City of Conroe,*
    87 F.4th 290 (5th Cir. 2023) ................................................................ 5, 12

*Timpa v. Dillard,*
    20 F.4th 1020 (5th Cir. 2021).....................................................7, 8, 9, 10

*Turner v. Scott,*
    119 F.3d 425 (6th Cir. 1997) ....................................................................11

*Walton v. Tunica County,*
    648 F. Supp. 3d 780 (N.D. Miss. 2023)............................................ 12, 13

*White v. City of Houston,*
    2021 WL 6112791 (S.D. Tex. Dec. 27, 2021)...........................................12

*Whitley v. Hanna,*
    726 F.3d 631 (5th Cir. 2013) ......................................................................5

*Wilson v. Layne,*
    526 U.S. 603 (1999) .....................................................................................11

*Young v. City of Baton Rouge,*
    2026 WL 540551 (M.D. La. Feb. 26, 2026)...............................................6

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ...................................................................................................4

*Zorn v. Linton*,
    607 U.S. ---, 146 S. Ct. 926 (2026)..........................................................................2, 3

## Statutes

42 U.S.C. § 1983 ....................................................................................................4, 8, 9, 13

## INTRODUCTION

Thomas dedicates most of his brief to disputing facts, arguing that Johnson used excessive force, and arguing that Bruss and Schultz had an opportunity to intervene. But those issues are not before this Court. For purposes of this appeal, Bruss and Schultz do not challenge the district court's resolution of alleged factual disputes over the elements of Thomas's bystander liability claims. This appeal presents a much narrower legal question: **whether Bruss and Schultz had a clearly established constitutional duty to intervene during an active canine-assisted apprehension**. They did not.

Thomas's continued focus on the underlying force and opportunity to intervene underscores his central error—conflating the elements of bystander liability with the distinct requirement that the asserted duty be clearly established. In the Fifth Circuit, it is not enough to show that an officer may have used excessive force and that another officer could have intervened. A plaintiff must *also* identify precedent placing the bystander's alleged duty beyond debate in the specific circumstances presented. That demanding standard carries particular weight in excessive-force cases, where clearly established law must be defined with a high degree of specificity. Thomas identifies no such authority. This failure is not a mere oversight because this Court has never held that officers have a duty to intervene during an active, rapidly-evolving canine-assisted apprehension, much less one where the handler moves in to handcuff the suspect immediately after releasing the canine.

1

"Qualified immunity is justified unless no reasonable officer could have acted as Officer[s] [Bruss and Schultz] did here, or every reasonable officer faced with the same facts would" have acted differently.  *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019). Because Thomas cannot identify any case clearly establishing a duty to intervene in these circumstances, his claims against Bruss and Schultz fail, and the district court's denial of qualified immunity should be reversed.

## ARGUMENT AND AUTHORITIES

### A.    Clearly established law must be defined with a "high degree of specificity" in excessive force cases.

On March 23, 2026, the United States Supreme Court reaffirmed that clearly established law must be defined with a "high degree of specificity," particularly in excessive-force cases:

> To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Constitution.  The relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Principles stated at a high level of generality—such as that an officer may not use excessive force—do not suffice.

*Zorn v. Linton*, 607 U.S. ---, 146 S. Ct. 926, 930–31 (2026) (citations and quotations omitted).

In *Zorn*, a protester brought a Fourth Amendment excessive force claim against a police officer who—after issuing repeated warnings—put the protester in a rear wristlock.  *Id.* at *929.  The Supreme Court rejected the argument that prior precedent,

2

including *Amnesty America v. West Hartford*, 361 F.3d 113 (2004), clearly established the unlawfulness of that conduct because, even though *Amnesty America* also involved the use of a rear wristlock on a protester, the officer in *Amnesty America* did not give a warning before using force. *Id.* Given this slight variation in facts, the Supreme Court emphasized that *Amnesty America* "lacks the 'high degree of specificity'" necessary. *Id.*

Both Supreme Court and Fifth Circuit precedent underscore that a demanding level of specificity is critical in excessive force cases because it is an area of law "in which the result depends very much on the facts of each case" and in which claims often turn on "split second decisions" to use force. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)); *see Kisela*, 584 U.S. at 103 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.") (citations and quotations omitted). Officers are therefore entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue, meaning that "the law must be so clearly established that—in the blink of an eye, in the middle of a high-speed chase [or, as is the case here, in the middle of an active canine-assisted apprehension]—every reasonable officer would know it immediately." *Morrow*, 917 F.3d at 876. "That is a necessary part of the qualified-immunity standard, and it is a part that the [district court] here failed to implement in a correct way." *Kisela*, 584 U.S. at 104.

3

Thomas ignores this controlling framework and instead argues that he is not required to identify a case "directly on point." *Appellee's Brief* at p. 6. He notably makes this argument by relying on authorities that do not involve excessive force. *Id.* (citing *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (improper detention, substantive due process, and civil conspiracy); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (warrantless search); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (violation of material witness statute and improper detention); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (cruel and unusual punishment)). These generalized qualified immunity standards do not govern excessive force claims.

There can be no legitimate dispute that, to defeat qualified immunity, Thomas must identify precedent that clearly defines a duty to verbally intervene in a canine-assisted apprehension with a "high degree of specificity" and that "squarely governs" the circumstances presented. As detailed below, he failed to do so. This Court should reverse.

**B.    The Fifth Circuit requires plaintiffs alleging bystander liability to identify clearly established authority requiring intervention in the specific context presented.**

The Fifth Circuit imposes a distinct and demanding burden on plaintiffs pursuing Section 1983 claims based on bystander liability. A plaintiff must show not only that the primary officer violated a clearly established constitutional right and that there was a reasonable opportunity to intervene, but also that the bystander officer had a **clearly established duty to intervene in the circumstances presented**. *See Joseph on behalf of*

4

*Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020); *Howard v. City of Houston, Tex.*, 2022 WL 479940, at *12 (S.D. Tex. Feb. 16, 2022) (citing *Bartlett*, 981 F.3d at 345)).  In other words, even if the elements of bystander liability are satisfied, a plaintiff must still identify clearly established law requiring intervention in the specific context at issue.  *Bartlett*, 981 F.3d at 345; *Whitley v. Hanna*, 726 F.3d 631, 647 n.13 (5th Cir. 2013); *Norman v. Ingle*, 151 F.4th 707, 714 (5th Cir. 2025).

For example, in *Howard v. City of Houston*, the United States District Court for the Southern District of Texas held that the plaintiff plausibly alleged that the bystander officer witnessed another officer engage in excessive force by using a pair of handcuffs as "brass knuckles" and beating the plaintiff on the back of the head.  *Howard*, 2022 WL 479940, at *1.  But, applying *Bartlett*, the court granted the bystander officer qualified immunity because it was not clearly established that the officer had a constitutional duty to intervene under those specific circumstances.  *Id.* at *12.

Likewise, in *Sligh v. City of Conroe*, this Court concluded that a factfinder could find excessive force in a canine deployment, yet still held that the bystander officer was entitled to qualified immunity because the plaintiff failed to identify clearly established law requiring intervention in that context.  *Sligh v. City of Conroe*, 87 F.4th 290, 301 (5th Cir. 2023); *see also Martinez v. Tex. Dep't of Crim. Justice*, 2024 WL 5111975, at *16 (S.D. Tex. Nov. 12, 2024), *report and recommendation adopted sub nom. Martinez v. Trevino*, 2024 WL 5110066 (S.D. Tex. Dec. 13, 2024) (holding that bystander employee was entitled to qualified immunity because plaintiffs did not cite to any authority that specifically

held that "a non-driver violated the Eighth Amendment by failing to intervene to stop another officer's reckless driving," and noting that "to overcome qualified immunity, Plaintiffs must show not only that there was a clear constitutional violation by [the driver] but also that [the non-driver] had a clearly established duty to intervene") (citing *Sligh*, 87 F.4th at 301)); *Young v. City of Baton Rouge*, 2026 WL 540551, at *23 (M.D. La. Feb. 26, 2026) (holding that bystander officer was entitled to qualified immunity because the plaintiff "failed to provide a case establishing that every reasonable officer would know, beyond debate, that they had a duty to intervene to prevent that search"). These cases demonstrate a consistent principle: courts do not stop at whether a bystander officer could have intervened—they require plaintiffs to also identify precedent clearly establishing that an officer was constitutionally required to do so in that specific context.

This "extra step" is where Thomas's argument fails and the district court erred. In his briefing below, Thomas repeatedly conflated the elements of bystander liability with the clearly established prong of qualified immunity. He argued only that Bruss and Schultz were liable for bystander liability because they allegedly observed excessive force, had an opportunity to intervene, and failed to do so. [ROA.1891; ROA.4038; ROA.4050-4056; ROA.4170-4712]. But he never argued—let alone identified authority showing—that it was clearly established that Bruss and Schultz had a constitutional duty to intervene in the circumstances presented here. For instance, in response to Bruss and Schultz's motion for summary judgment, Thomas only used the words "clearly

6

established" once, in the context of the canine handler's alleged use of excessive force. [ROA.4049]. The same is true in Thomas's own motion for summary judgment, where he invoked "clearly established" law only with respect his own right to be free from excessive force. [ROA.1889]. And in his summary judgment reply, he at most asserted a generalized duty to intervene, unsupported by factually analogous precedent. [ROA.4173]. This record confirms that Thomas failed to meet his burden, and that Bruss and Schultz are entitled to qualified immunity.

**C.   Thomas failed to identify clearly established law requiring Bruss and Schultz to intervene in a canine-assisted apprehension.**

Thomas did not identify any precedent placing the alleged duty to intervene "beyond debate" in the specific context confronting Bruss and Schultz, likely because no such precedent exists. The Fifth Circuit has never held that officers have a clearly established duty to intervene during a canine-assisted apprehension. The absence of such authority requires qualified immunity.

**1.   *Hale*, *Timpa*, and *Austin* do not clearly establish a duty to intervene in a canine-assisted apprehension.**

Thomas argues that *Hale v. Townley*, *Timpa v. Dillard*, and *Austin v. City of Pasadena*, clearly establish a duty to intervene "under these specific circumstances." *Appellee's Brief* at p. 31. They do not. Those cases either articulate general bystander-liability principles or involve materially different factual settings. None addresses the critical question here: whether the law is so clearly established that—in the blink of an eye, in the middle of a rapidly-evolving canine-assisted apprehension—every reasonable officer would

7

Case: 25-20590    Document: 27    Page: 13    Date Filed: 05/13/2026

know that they needed to intervene in Johnson's active efforts to arrest Thomas, particularly when Johnson moved in to handcuff Thomas immediately after releasing his canine.

First consider *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995). In that case, the Court articulated the elements of bystander liability and recognized that officers may be liable under Section 1983 as bystanders. But the Court did not hold that every officer who satisfies the bystander liability elements is necessarily stripped of qualified immunity in all circumstances. Nor could *Hale* clearly establish a duty here. The bystander officers in *Hale* "stood by and laughed" while another officer violently assaulted the plaintiff—slamming him against a car, kicking him, ramming his fist into the plaintiff's testicles, and repeatedly attempting to smash the plaintiff's head into the vehicle. *Id.* at 919. That kind of sustained, egregious conduct bears no resemblance to the rapidly evolving circumstances presented by the canine-assisted apprehension at issue in this case.

*Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021) is even further afield. There, bystander officers stood by for *fourteen minutes* while another officer subjected the arrestee to excessive force. *Id.* They also expressed surprise and made jesting comments while the acting officer continued kneeling on the incapacitated individual. *Id.* That type of prolonged scenario involving obvious medical distress does not "squarely govern" a forty-three-second dynamic canine deployment.

And in *Austin v. City of Pasadena*, 74 F.4th 312, 331 (5th Cir. 2023), the bystander officers <u>actively participated</u> in the use of force—dragging the plaintiff across concrete,

8

tasing him repeatedly, and pinning him to the ground for several minutes. *Austin* says nothing about the duty of bystander officers (who did not participate in the use of force) to intervene in a fast-moving canine apprehension directed by another officer.

Neither the nature of the force nor the surrounding circumstances in *Hale*, *Timpa*, or *Austin* resemble those at issue here. Because those cases involve materially different conduct and fundamentally different conditions, they cannot clearly establish that Bruss and Schultz had a constitutional duty to intervene during the forty-three-second canine-assisted apprehension.

> **2.    Thomas's cited authority does not alleviate his duty to demonstrate that Bruss and Schultz had a clearly established constitutional duty to intervene in a canine-assisted apprehension.**

Thomas attempts to side-step his burden through an overbroad reading of this Court's decisions on qualified immunity and bystander liability. None supports his position.

Thomas first misreads *Hamilton v. Kindred* and *Carroll v. Ellington*. In both cases, the Court cited *Hale v. Townley* for the proposition that an officer may be liable as a bystander under Section 1983. *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). But neither decision held that officers had a clearly established duty to intervene under the specific circumstances presented. That distinction is critical. The existence of a general doctrine of bystander liability does not clearly establish when that duty arises in a particular factual setting. And, given that *Hamilton* involved invasive body cavity searches and *Carroll* involved an

alleged excessive use of force after a suspect had been handcuffed and subdued, these decisions do not provide the kind of particularized guidance required to clearly establish a duty to intervene in the circumstances confronted by Bruss and Schultz.

Thomas similarly mischaracterizes *Ambler v. Nissen*. In *Ambler*—a case where officers tased and physically restrained a suspect who was in "obvious medical distress," resulting in the suspect's death—the Court's qualified immunity analysis focused primarily on whether the acting officers violated clearly established law and whether the bystander officer had a reasonable opportunity to intervene—not the distinct legal issue of whether there was a clearly established duty for a bystander officer to intervene in comparable circumstances. *See Ambler v. Nissen*, 116 F.4th 351, 364 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2683 (2025).

Thomas's reliance on *Timpa v. Dillard* and *Austin v. City of Pasadena* fares no better. In both cases, this Court noted the general duty to intervene derived from *Hale*, and concluded that fact disputes precluded summary judgment on bystander liability. *Timpa*, 20 F.4th at 1038–1039; *Hale*, 74 F.4th at 331. But neither decision squarely addressed the question of whether it was clearly established that officers must intervene in the specific circumstances at issue. Nor did those panels engage with the requirement articulated in *Bartlett* that a plaintiff must identify precedent clearly establishing a duty to intervene in comparable circumstances. *Bartlett*, 981 F.3d at 345. At most, *Timpa* and *Austin* reflect that a general duty to intervene exists. They do not define when that duty arises in a context like this one.

To the extent there is any tension between *Bartlett* and later panel decisions, the Fifth Circuit's rule of orderliness controls, meaning *Bartlett* governs absent an intervening change in law. *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). And in any event, any perceived tension in the case law only underscores that the asserted duty is not clearly established. *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) ("[I]f judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy.") (citing *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).

Finally, Thomas's reliance on out-of-circuit authority is misplaced. The Eleventh and Six Circuits do not follow the approach in *Bartlett*. *See, e.g., Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1278 (11th Cir. 2021); *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997). And "[w]here no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Swanson*, 659 F.3d at 372.

### 3. The Fifth Circuit has never held that bystander officers have a duty to intervene in a canine-assisted apprehension.

Thomas misunderstands Bruss and Schultz's reliance on canine-related authorities. The point is not that these cases are factually identical, but that they share a critical feature: plaintiffs in those cases—like Thomas here—failed to identify clearly established law requiring a bystander officer to intervene during a canine-assisted

11

apprehension. No such authority exists, and that absence of authority unquestionably demands qualified immunity.

In *Sligh v. City of Conroe*, this Court held that a canine officer's decision to deploy his canine constituted an excessive use of force, but nevertheless held that the bystander officer was entitled to qualified immunity because the plaintiff failed to identify clearly established law requiring intervention. *Sligh*, 87 F.4th at 299–301. Nothing in *Sligh* suggests that such a duty was clearly established. To the contrary, *Sligh* confirms that, even in the canine context, plaintiffs must identify precedent placing the bystander's obligation "beyond debate," and that failure to do so warrants qualified immunity.

Courts within the Fifth Circuit have likewise noted the absence of clearly established authority relating to canine-assisted apprehensions. For example, in *White v. City of Houston*, the United States District Court for the Southern District of Texas observed that there are no Fifth Circuit cases addressing whether an officer may be held liable for failing to intervene to stop a canine bite. *White v. City of Houston*, 2021 WL 6112791, at *17 (S.D. Tex. Dec. 27, 2021). Even after considering cases such as *Timpa* and *Hale*, the court held that the plaintiff failed to identify authority applying bystander liability in that context. *Id.*

Similarly, in *Walton v. Tunica County*, the United States District Court for the Northern District of Mississippi granted qualified immunity where the plaintiff failed to identify clearly established law requiring an officer to intervene after another officer deployed a canine. *Walton v. Tunica County*, 648 F. Supp. 3d 780, 797 (N.D. Miss. 2023).

The plaintiff there, like Thomas here, relied on general bystander-liability principles rather than context-specific precedent.

These cases confirm that the law is not settled—and certainly not clearly established—that officers have a duty to intervene in a canine-assisted apprehension. Because no precedent clearly establishes that the Constitution required Bruss and Schultz to physically or verbally intervene in Johnson's canine-assisted efforts to gain control of and handcuff Thomas, they are entitled to qualified immunity.

**D.    Controlling precedent dictates that qualified immunity applies to claims brought under to 42 U.S.C. § 1983.**

The Court need not consider Thomas's argument that qualified immunity does not apply to Section 1983 claims because this Court is bound by controlling Supreme Court precedent as to the existence of the defense of qualified immunity. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory of constitutional rights of which a reasonably person would have known."); *see also Green v. Thomas*, 129 F.4th 877, 890 (5th Cir. 2025) (acknowledging that the Fifth Circuit cannot overturn Supreme Court precedent and must therefore recognize the qualified-immunity doctrine).  And, as demonstrated above, Bruss and Schultz are entitled to qualified immunity as a matter of law.

13

## CONCLUSION AND PRAYER

For the reasons stated above and in Appellants' Brief, Appellants Eric M. Bruss and Wayne Schultz were entitled to qualified immunity as a matter of law on Thomas's constitutional claims.  Bruss and Schultz respectfully request that this Court grant their appeal, reverse the relevant rulings of the court below, render judgment granting them qualified immunity, grant Bruss and Schultz their costs of appeal, and grant Bruss and Schultz all such other and further relief, both at law and in equity, to which they have shown themselves justly entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Stephanie A. Hamm
      Stephanie A. Hamm
      Texas Bar No. 24069841
      shamm@thompsonhorton.com
      Alexa Gould
      Texas Bar No. 24109940
      agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

ATTORNEYS FOR APELLANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been forwarded to the following counsel and/or parties of record by electronic service on May 13, 2026:

Brittany Francis
PEOPLES' COUNSEL
1900 W. Gray Street
P.O. Box 130442
Houston, Texas 77219
Telephone: (713) 487-9809

Alessandro Clark-Ansani
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Telephone: (202) 844-4975


By:   /s/ Stephanie A. Hamm
        Stephanie A. Hamm

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5TH CIR. R. 32.2 and .3, the undersigned certifies this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7).

1.    EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. R. 32.2, THE BRIEF CONTAINS (select one):

    A.    <u>3,438 </u>words, OR

    B.    _____ lines of text in monospaced typeface.

2.    THE BRIEF HAS BEEN PREPARED (select one):

    A.    in proportionally spaced typeface using:

Software Name and Version:    **Microsoft Word 2604**

in (Typeface Name and Font Size): **Garamond 14 pt**

OR

    B.    in monospaced (nonproportionally spaced) typeface using:

Typeface name and number of characters per inch:

3.    THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

By: __/s/ Stephanie A. Hamm_____
      Stephanie A. Hamm